IN THE MATTER OF ELTON A. CONDA,
SURROGATE OF THE COUNTY OF BURLINGTON.

Argued January 6, 1977—Decided February 23, 1977.

230

Mr. *Charles H. Hoens, Jr.* argued the cause for respondent (*Messrs. Lum, Biunno and Tompkins,* attorneys).

Mr. *Robert E. Cowen* argued the cause for Advisory Committee on Judicial Conduct.

PER CURIAM. This proceeding had its inception in an investigation by the Advisory Committee on Judicial Conduct (Rule 2:15) of complaints received concerning the conduct of respondent in his capacity as Surrogate of Burlington County. While the complaints comprised six separate transactions or series of transactions, the Committee, after a full hearing, at which respondent was represented by counsel and testified, found four categories of cited conduct not substantiated but that, as to the two others, respondent had engaged in actions proscribed by the Code of Judicial Conduct. The first was the alteration of the designation of bank depositories set forth in orders made by county court judges so as to substitute the names of banks selected by respondent and to cause the deposits to be made in such banks rather than those specified in the

court orders. The second was the use of respondent's Surrogate office facilities and employees for political purposes.

On the basis of the stated findings the Committee recommended that the court order respondent to desist from both of the objectionable courses of conduct specified and that he be publicly censured for such conduct as violative of the Code of Judicial Conduct. The Committee chose to recommend censure rather than removal, stating that because "the Supreme Court has not ruled definitively upon the status of Surrogates and the standards of conduct applicable to them, it is the Committee's opinion that censure rather than removal would be the appropriate action in the first case in which the question is presented".

We accordingly issued the order to show cause, directed to censure rather than removal, upon which we now render our determination.

I

We deal first with respondent's motion to dismiss these proceedings on the grounds that (a) the Committee and the Court have no jurisdiction to discipline respondent because he is not a "judge" over whom the Court has disciplinary or removal power under either the Constitution of 1947 or the judicial removal act, *L.* 1970, *c.* 151, *N. J. S. A.* 2A:1B-1 *et seq.,* and (b) the actions of respondent here complained of were not as a judge but as a clerk of the Surrogate's Court, rendering removal proceedings or judicial disciplinary sanctions inappropriate.

The first branch of respondent's motion is simply stated. The Constitution of 1947 does not mention surrogates in Article VI, the Judicial Article thereof, but does in Article VII, entitled "Public Officers and Employees", which renders the office of surrogate an elective one. Moreover, the Constitution provides for removal of judges, apart from impeachment, only by Article VI, Section VI, par. 4, which provides that "the Judges of the Superior Court and the Judges of the County Courts" shall be subject to removal by

the Supreme Court for such causes and in such manner as may be provided by law. The judicial removal act, cited above, provides for the removal of "any judge of the superior court, county court, county district court, juvenile and domestic relations court and municipal court". Respondent's position is that the office of surrogate is neither named in nor comprehended by the removal statute and that therefore *R.* 2:15–8, which implements the statute and includes "Surrogate's Court" among the courts whose judges may be removed under the statute and rule, is to that extent invalid and ineffective.

The argument made by respondent in this regard is a substantial one. However, we need not resolve the point in this case as the order to show cause herein does not look to removal of respondent but rather to censure of him as a judicial officer. As will be seen, the Court has ample authority in that respect.

## II

Notwithstanding respondent's contention that the Constitution of 1947 treats surrogates as public officers rather than judges, this classificatory nomenclature cannot derogate from the fact that a surrogate is a judicial officer and holds a court in our existing judicial system. *N. J. S. A.* 2A: 5–1 states that:

There shall be but one surrogate elected in each county of this state. He shall hold the surrogate's court of the county and shall be both the judge and clerk thereof. * * *

In *Mellor v. Kaighn,* 89 *N. J. L.* 543, 546 (E. & A. 1916), the court said: "The surrogate of a county in probating wills acts judicially and holds a court". Other judicial acts performed by surrogates include the issuance of letters of administration, appointment of guardians of minors, determination of decedent's domicile for purposes of jurisdiction to probate a will, determination of the

value of small estates for purposes of devolution of estate to spouses and the issuance of commissions for the taking of depositions from out of state witnesses to wills. The fact that all such actions and determinations are *ex parte* and that the surrogate may not resolve a contested or doubtful matter does not affect the judicial character of the acts and determinations involved. They are distinct from the separate function of the surrogate as clerk of the surrogate's court and as clerk of the probate division of the County Court. *N. J. S. A.* 2A:3–2.

█ It is thus apparent that the surrogate is a judicial officer performing important judicial functions in our court system. From that standpoint it is appropriate and in accord with sound public policy that he be held to be a judge, and subject both to the administrative oversight of the Chief Justice and the Supreme Court, see Constitution of 1947, Article VI, Section II, par. 3, Section VII, par. 1, and to the strictures of the Code of Judicial Conduct so far as not necessarily inconsistent with his constitutional status as an elective officer. We herewith so hold.

### III

█ We turn to the conduct for which the Advisory Committee cited respondent. Respondent does not dispute his alteration of the county court orders and his deposit of the funds involved in banks other than those named in the orders. All of the instances involve "friendly settlements" of litigated claims of minors. Respondent seeks to justify this conduct on the ground that the orders were void because he, as asserted fiduciary of the infant's interests involved in these matters, was not given notice of the intended entry of the orders. The contention is completely groundless, and misses the point of the charge made against him. In the first place, the surrogate is not a party in interest in such matters, either directly or in a representative capacity, so as to be required to be given notice of an application for an order for depositing funds in bank.

See *R.* 4:44–1 *et seq., R.* 4:48A, and *N. J. S. A.* 3A:7–14.1. But even if there were any irregularity or illegality in an order signed by a county court judge, it would be inexcusable for anyone, particularly an officer of the court like a surrogate, whether acting as court clerk or judge, to alter such an order without the consent of the signatory judge. The impropriety was compounded by the failure to make the deposits required by the orders. The prudence or validity of the orders is beside the point. Unauthorized alteration of a court order or the violation of the directions therein borders on, if it does not actually constitute, a contempt of the court.

██ Respondent seeks to downgrade his responsibility in this regard by asserting that he acted as clerk, not judge, of the surrogate's court. But he had inconsistently argued that his actions were as a fiduciary of infants' property, plainly a judicial aspect of his office. In any case, we do not think respondent can choose which aspect of his office to assign responsibility for this conduct. It constituted improper activity both as clerk and judge of the court.

We concur in the Committee's findng that respondent's conduct in the respects just discussed violated Canon 2A of the Code of Judicial Conduct ("A judge should respect and comply with the law * * *"). Respondent is accordingly censured therefor. We expect that such conduct will not be repeated by respondent in the future.

██ The second phase of respondent's behavior found culpable by the Committee was his carrying on political activities in his office during office hours and using surrogate employees for such purposes. The record of testimony taken before the Committee strongly supports its conclusion that this activity took place, and to a substantial extent. In this regard a distinction must be drawn between political activity by a surrogate not related to the use of his office or its facilities and its employees therefor. *R.* 1:17–1 prohibits political activity on the part of certain enumerated officers and employees serving the judicial branch of gov-

ernment. This includes deputy surrogates and all persons employed by or regularly assigned to a surrogate's office. *Id.* (g). Excluded from the prohibitions, however, are surrogates themselves. *R.* 1:17–2. But that exclusion appertains only to activity by a surrogate on his own time and with his own facilities, not those of the public or of the publicly operated and financed surrogate's office. Those offices and facilities are improperly used for any purposes except that of conducting the work and business of the surrogate's court.

■ ■ We conclude that respondent's conduct in the respects noted, while not a violation, as found by the Committee,[1] of those sections of the Code of Judicial Conduct which prohibit political activity by a judge, does violate Canon 2A of that Code, cited above, as a misuse of public facilities. For this, respondent is herewith censured.

*For censure*—Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—5.

*Opposed*—None.

---

[1] *R.* 1:17–2 excludes surrogates from the prohibition of political activity otherwise set forth therein because the surrogate is constitutionally an elective office. However, in view of the important place of that office in the judicial structure, it would obviously serve the public interest if surrogates were voluntarily to refrain from political activity not necessarily incident to their campaigns for reelection.