164 N.J. Super. 386 (1978)
396 A.2d 613
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BURLINGTON, PLAINTIFF,
v.
ELTON A. CONDA, SURROGATE OF THE COUNTY OF BURLINGTON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 30, 1978.
*389 Mr. M. Jefferson Davis, Burlington County Solicitor, for plaintiff.
Mr. Joseph F. Polino for defendant (Messrs. Polino and Williams, attorneys).
LENOX, A.J.S.C.
"No county * * * shall * * * give any money * * * to or in aid of any individual * * *." N.J. Const. (1947), Art. VIII, § III, par. 2.
By its complaint for declaratory judgment pursuant to N.J.S.A. 2A:16-50 et seq., plaintiff Board of Chosen Freeholders of the County of Burlington seeks guidance as to whether it has the obligation or discretionary authority to reimburse defendant Surrogate of the County of Burlington for legal fees incurred in his defense of disciplinary proceedings *390 before the Advisory Committee on Judicial Conduct and the Supreme Court of New Jersey. Now before the court is plaintiff's motion for summary judgment, and there being "no genuine issue as to any material fact challenged" the question may be determined as a matter of law. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954). See Evid. R. 3.
Complaints against defendant in his capacity as Surrogate of Burlington County were received and investigated by the Advisory Committee on Judicial Conduct which was established by the Supreme Court of New Jersey pursuant to R. 2:15 to assist the court in fulfilling its administrative responsibilities and to implement the statutory provisions relating to proceedings for the removal of judges. Following a full hearing the committee found that defendant, in his capacity as surrogate, had engaged in improprieties proscribed by the Code of Judicial Conduct. Because of the absence of a definitive ruling on the status of surrogates and the standard of conduct applicable to them, the committee recommended the censure of defendant rather than removal from office. Acting upon that recommendation the Supreme Court issued an order directing defendant to show cause why he should not be publicly censured for his conduct.
The complaints investigated by the committee comprised six separate occurrences or series of occurrences. The committee dismissed four categories of allegedly improper conduct but determined that as to two others the complaints were substantiated and that defendant had engaged in conduct violating Canon 2 A of the Code of Judicial Conduct. The Supreme Court concurred and censured defendant. In re Conda, 72 N.J. 229 (1977). Defendant was represented by counsel at all proceedings before the committee and the Supreme Court. Counsel fees and costs of $6,511.62 were incurred in connection with his defense of these proceedings and defendant has presented to plaintiff a formal claim for full reimbursement.
*391 The two categories of prohibited conduct for which defendant was censured by the Supreme Court require separate consideration. The first involved the alteration by defendant of the designation of bank depositories contained in orders entered by County Court judges by the substitution of the names of banks selected by defendant, resulting in deposits being made in such banks rather than in those specified in the orders. The second involved the use by defendant of his county employees and office facilities for political purposes.
Defendant was censured as a judicial officer.
It is thus apparent that the surrogate is a judicial officer performing important judicial functions in our court system. From that standpoint it is appropriate and in accord with sound public policy that he be held to be a judge, and subject both to the administrative oversight of the Chief Justice and the Supreme Court * * * and to the strictures of the Code of Judicial Conduct so far as not necessarily inconsistent with his constitutional status as an elective officer. (In re Conda at 234)
The parties agree that disciplinary proceedings for judicial misconduct in office are sui generis  neither civil nor criminal in the usual sense. R. 2:15 provides a "detailed mechanism for supervision of judicial conduct, the investigation of accusations of judicial impropriety, and the disposition of judicial misconduct." Pressler, Current N.J. Court Rules, Comment R. 2:15. Specifically included within this section are judges of the surrogate's court. R. 2:15-8.
The conduct of members of the bar and judges of courts of the State is governed by the Disciplinary Rules of the Code of Professional Responsibility and the Code of Judicial Conduct of the American Bar Association, as amended and supplemented by the Supreme Court. R. 1:14 and Pressler, Current N.J. Court Rules, Appendix to Part I. The purpose of disciplinary proceedings under R. 1:20 for ethical violations by attorneys is the protection of the public, purification of the bar and prevention of recurrent deviations. *392 In re Loring, 73 N.J. 282 (1977). The conduct of disciplinary proceedings for judicial misconduct is analogous to that for handling complaints of ethical violations against members of the bar. See Pressler, Current N.J. Court Rules, Comment R. 2:15. Correspondingly, the Supreme Court's responsibility to keep the house of the law in order extends to the conduct of judges as well as attorneys in practice. In re Gaulkin, 69 N.J. 185 (1976).
Defendant's claim for reimbursement is a novel one. While there is a plethora of reported cases and statutes in New Jersey and elsewhere relating to the obligation of a governmental employer to reimburse its employee for losses including counsel fees incurred in connection with civil and criminal litigation arising out of the performance of the duties of the employment, there appears to be no similar authority for the recovery of losses incurred in connection with proceedings for the discipline of governmental attorneys or judges. As one court noted in declaring unconstitutional legislation creating a municipal debt for expenses incurred by a police officer in defending himself against a charge of official misconduct,
* * * [defendant] made an unprecedented demand, and its novelty, when the numerous opportunities for the presentation of such claims for time out of mind are considered, is almost a demonstration that it was not incurred for a public purpose. While vast numbers of people during the history of the state have had claims similar in principle, seldom, if ever before, has one been bold enough to ask for * * * that under consideration. [Chapman v. City of New York, 168 N.Y. 80, 61 N.E. 108, 111 (Ct. App. 1901).]
It is probable that on no prior occasion has a New Jersey judicial officer or governmental attorney after defending himself in disciplinary proceedings sought, much less been awarded, reimbursement for the expense thereof. Yet this forms no basis for denial of such a claim and the propriety thereof must be determined on the basis of applicable legal principles.
*393 Plaintiff initially contends that the nature and result of the earlier proceedings (disciplinary action culminating in censure) are dispositive of the issue of plaintiff's authority to reimburse defendant in that charges of official misconduct ipso facto bar recovery for the cost of defense, particularly when discipline is ultimately imposed. Defendant responds that the nature of the proceedings is not determinative of the issue and argues that the controlling legal standard is that generally accepted as governing claims by governmental officials for restitution. This standard requires consideration of three factors: whether the actions of the public officer were performed in good faith; whether they arose out of and in the course of his performance of his public duties, and whether they were done for a public purpose, i.e., to benefit the public entity. See 3 McQuillin, Municipal Corporations (3 ed. 1973 rev.), § 12.137 at 575. Accord, Errington v. Mansfield Tp. Bd. of Ed., 81 N.J. Super. 414 (App. Div. 1963), 42 N.J. 320 (1964) and 100 N.J. Super. 130 (App. Div. 1968). Defendant contends that his actions meet this standard and that plaintiff has, therefore, both the authority and the obligation to reimburse him. Plaintiff, in turn, counters that even if the standard urged by defendant were to be applied, his conduct fails to meet that standard. Specifically, plaintiff contends that defendant's alteration of court orders was not in good faith even if undertaken in subjective good faith and that plaintiff derived no benefit therefrom and had no connection with or interest in the same, and thus that the actions were not taken for a public purpose. As to defendant's conduct in using his office for political purposes, plaintiff contends this was purely personal and meets none of the factors of the standard upon which defendant relies.
The categories of conduct for which defendant was cited and censured will be treated in inverse order. The second category requires little comment. This involved his engaging in political activities in his office during office hours and using public employees for such purposes (e.g., *394 to make lists of voter quotas, to run personal and political errands and to handle personal and political telephone calls). The Supreme Court carefully noted the distinction between this improper use of public offices and facilities and the legitimate political activity which a surrogate, as an elected official, may pursue on his own time and with his own facilities. Public offices and facilities are "improperly used for any purposes except that of conducting the work and business of the surrogate's court." In re Conda, 72 N.J. at 236. On this basis the court found that defendant's conduct violated Canon 2 A of the Code of Judicial Conduct as a misuse of public facilities. These activities were performed neither in the course of defendant's employment as surrogate nor in good faith. While not criminal, State v. Makwinski, 133 N.J. Super. 487, 490-91 (Law Div. 1973), conduct not too dissimilar will support an indictment. See N.J.S.A. 2A:135-3.
There is no basis for reimbursement of legal expenses incurred in defending a disciplinary proceeding involving a charge of such obviously improper conduct. It does not even arguably involve those factors which defendant urges for consideration. It was not performed in the course of defendant's public duties, was not done in good faith and did not benefit the public entity. Rather, involving as it did personal gain at public expense, such conduct is the antithesis thereof. Since this alone would have supported the disciplinary charge, necessitated the legal expenditures in defense and resulted in the same reprimand by the Supreme Court, a determination that plaintiff is without authority to authorize payment of defendant's claim is warranted. Reliance upon such a determination is unnecessary, however, for consideration of the remaining charge in the disciplinary proceedings discloses that the same result obtains.
This category, involving alteration of court orders, requires closer scrutiny. Unlike defendant's use of public offices and facilities, this conduct is more akin to the type for which our courts have traditionally authorized reimbursement *395 of legal fees incurred in the defense of civil and criminal litigation arising therefrom.
Defendant's premise, however, that reimbursement may be had for expenses incurred in defending a charge of official misconduct finds no support in reported decisions. As expressed by the court in Chapman v. City of New York, supra,
Payment of his expenses by the public would be a mere gratuity, and without the sanction of custom or precedent. There was no moral obligation on the part of the respondent to discharge such a claim, for it had no foundation in natural or legal right. It is not the duty of the public to defend or aid in the defense of one charged with official misconduct. The history of morals or jurisprudence recognizes no such obligation. [61 N.E. at 110]
Many of defendant's cited cases involve statutes which are merely expressive of the common law regarding reimbursement, including N.J.S.A. 40:148-1 and N.J.S.A. 40:48-7 which are general taxation statutes authorizing the raising of revenues for municipal purposes. However, no statute authorizes payment of defendant's claim, and it has been held that there is "no statutory authority for the indemnification of municipal officers for the costs of defense of a criminal action charging what amounts to official misconduct." Manalapan Tp. v. Loeb, 126 N.J. Super. 277, 278 (Ch. Div. 1974), aff'd per curiam, 131 N.J. Super. 469 (App. Div. 1974).
Defendant's conduct fails to meet any of the requirements of the standard he urges the court to apply Errington v. Manville Tp. Bd. of Ed., supra, held that
To warrant defense at the public expense, when a public official is sued individually * * * it must be shown that he was performing in good faith a duty of his office or position in furtherance of the work of the board for which he was purportedly acting. [81 N.J. Super. at 420]
Thus the first requisite factor is that the conduct have been performed in good faith. Although the impropriety of defendant's *396 conduct was established by the Supreme Court, In re Conda, the parties stipulate that in altering court orders defendant acted with good motivation, upon the mistaken belief that it was his obligation as surrogate to obtain the highest available rate of interest on funds deposited with him pursuant to R. 4:48A and N.J.S.A. 3A:6-31. While this conduct occurred in the course of his duties as surrogate of the county, he did not act with objective good faith. Unauthorized alteration of a court order "borders on, if it does not actually constitute, a contempt of the court." In re Conda, 72 N.J. at 235. The reason for the defiance of judicial authority cannot excuse an intentional breach of a court order. In re Brown, 50 N.J. 435 (1967). Contempt by a public official indicates a lack of good faith and a failure to act in the bona fide discharge of his duties. See West v. City of Utica, 71 Hun. 540, 24 N.Y.S. 1075 (Sup. Ct. 1893). In altering court orders defendant knew it was improper to do so although he sought no personal gain and mistakenly believed he acted for the public good. His motivation is as immaterial and no more in good faith than if he had unlawfully diverted county funds to needy people or private funds to the county account.
The second factor of the standard is that the actions of the public officer must have arisen out of and in the course of the performance of his public duties. While unquestionably defendant was acting in the course of his duties as surrogate, he was not acting as agent of the county. As surrogate, defendant is an employee of the county for administrative and remunerative purposes. While paid by county funds, he nevertheless acts within the state judicial system with all the rights and duties of his constitutional office. In the custody and investment of funds deposited with him by court order, he acts as an officer of the court, not the county. Thus it was that he was censured as a judicial officer. Faced with this issue, a New York court denied reimbursement.

*397 The rule is that although an agent may secure reimbursement from his principal for expense to which he has been put on account of litigation brought against him for acting in behalf of the principal, he cannot recover from the principal if such suit is brought against him to place personal liability on him for a personal breach of trust in the premises. Cory Bros. & Co., Ltd., v. United States, [2 Cir., 51 F.2d 1010] supra. Competent authority leads me to the opinion that in the custody and investment of such funds deposited by order of the court and invested by order of the court, the Chamberlain or County Treasurer as the case may be does not act as the agent of the county or of the municipality (Gray v. Board of Supervisors of Tompkins County, 93 N.Y. 603), but that he acts as an officer of the court. In view of this, the plaintiffs may not recover from the defendant city on the theory of principal and agent. [Buckley v. City of New York, 170 Misc. 412, 10 N.Y.S.2d 650, 653 (Sup. Ct. 1939)]
In substantial accord is a decision by the Supreme Court of New Hampshire in an action brought by a member of the board of police commissioners of the city to recover items of expense incurred by him in attending a hearing before the Governor and city council on charges preferred by the city council against the police commissioners whose salaries and expenses were by statute to be paid by the city. The charges of misconduct in office not sustained at the hearing, involved the failure by the police commissioners to enforce the liquor laws of the state. While finding another ground for denial of plaintiff's claim, the court in Gilbert v. City of Berlin, 76 N.H. 470, 84 A. 235 (1912), said:
As they are not the servants or agents of the city, no agreement on its part to indemnify them could be inferred or implied because of the relationship. If the commissioners perform their duty with respect to the enforcement of the liquor laws of the state, the city gains nothing; and if they neglect their duty it is subjected to no loss, penalty, or liability. In their enforcement, therefore, it would seem that the city in its corporate capacity, was not concerned, and could not legally ratify or adopt the acts or conduct of the commissioners as its own, or agree to assume the burden of aiding them in defending themselves against charges of misconduct. [84 A. at 237]
The final factor of the standard is that the acts be done for a public purpose. No benefit accrued to the public *398 from defendant's contumacious conduct. On the contrary, it is to the public benefit to have the integrity of court orders upheld. Government's paramount function is the enforcement of the laws and protection of the public interests. It should not be required to protect those who have been charged with the violation of those laws or with conduct prejudicial to those interests. See City of Del Rio v. Lowe, 111 S.W.2d 1208 (Tex. Civ. App. 1937), rev'd on other grounds, 132 Tex. 111, 122 S.W.2d 191 (Sup. Ct. 1938). Defendant was acting as a judicial officer and was bound to an even higher standard of ethical conduct than other public officials. He had a duty to enforce court orders. By altering them he failed to discharge that duty. His actions did not benefit the public and thus were not done for a public purpose.
In considering plaintiff's initial contention that there can be no right of reimbursement for expenses incurred in disciplinary proceedings, at least where there is a finding of misconduct in office, it is noteworthy that our cases reflect a more conservative approach to the right of reimbursement for the expense of defending criminal charges than civil litigation. The use of the standard applicable to civil cases is inappropriate in this case which involves misconduct in office, contempt of court and breach of judicial ethics. As stated by Judge Larner in Powers v. Union City Bd. of Ed., 124 N.J. Super. 590 (Law Div. 1973):
The liberal approach in applying the statute in civil litigation so as not to inhibit a board member from freely expressing himself and acting for the public good without fear of economic loss has no relevancy in the context of the criminal conduct in this case. No member of a board of education should be encouraged to engage in acts which may constitute crimes by the assurance that an acquittal on the charge will permit him to saddle defense costs upon the taxpayers of the community.
In connection with criminal conduct the facts should be analyzed strictly rather than liberally, so that reimbursement of legal fees and expenses should only ensue when the circumstances are such as to fit clearly within the legislative limitations. [at 597-598]
*399 Public policy dictates that public officials, acting in good faith within the apparent sphere of their duties and for the benefit of the public employer, should be protected by the employer against personal loss. The absence of such protection "would have a tendency to stifle debate and curtail appropriate action in matters of public concern." Cobb v. City of Cape May, 113 N.J. Super. 598, 602 (Law Div. 1971) (emphasis supplied). However, public policy in regard to reimbursement for the defense of a disciplinary or criminal proceeding is reflected in N.J.S.A. 40A:14-155, the statute at issue in Waterford Tp. v. Babli, 158 N.J. Super. 569 (Law Div. 1978), which provides:
Whenever a member or officer of a municipal police department or force is a defendant in an action or legal proceeding arising out of or incidental to the performance of his duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted  against him by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.
A final determination in favor of the officer is a prerequisite to reimbursement under this statute. Even with that limitation, N.J.S.A. 40A:14-155 is more liberal than its predecessor (N.J.S.A. 40:11-19) which expressly excluded payment of legal fees incurred by officers in defending themselves in any disciplinary or criminal proceedings instituted by the municipality even if they were found not guilty of the charges.
A similar statute concerning board of education members was at issue in Errington v. Mansfield Tp. Bd. of Ed., 100 N.J. Super. 132 (App. Div. 1968). That case involved N.J.S.A. 18:5-50.20:

*400 "Whenever a civil or a criminal action has been brought against any person for any act or omission arising out of and in the course of the performance of his duties as a member of a board of education, and in the case of a criminal action, such action results in final disposition in favor of such person, the cost of defending such action, including reasonable counsel fees and expenses, together with costs of appeal, if any, shall be borne by the board of education."
This statute is also but an expression of the existing common law. Errington, 100 N.J. Super. at 134. It, too, requires a favorable determination in a criminal case although not in a civil case.
Clearly, in determining the right to reimbursement, disciplinary proceedings are analogous to criminal proceedings. Both involve misconduct as the basis of the action. In both, the action is brought by a governmental entity or, in a disciplinary action against a judge, by the judicial branch itself. And in both the result is a penalty imposed on the guilty individual rather than typical civil relief. The censure of defendant by the Supreme Court for judicial misconduct was penal, not civil in nature.
Plaintiff has neither the duty nor the authority to reimburse defendant for legal fees incurred in his defense of disciplinary proceedings culminating in his official censure by the Supreme Court.