If you answered "No" to question No. 3, return your verdict now.

If you answered "Yes" to question No. 3, answer question No. 4 next.

4. What percentage of causal negligence which produced the injuries to Mary Ellen Dunn do you attribute to:

| Mr. D'Urso | ____% |
| Mrs. Dunn | ____% |
| **TOTAL** | **100%** |

Now return your verdict.

ROBERT T. PICKETT, PLAINTIFF, v. EARL HARRIS, INDIVIDU-
ALLY AND IN HIS OFFICIAL CAPACITY AS SURROGATE
OF ESSEX COUNTY, DEFENDANT.

Superior Court of New Jersey
Law Division (Civil)
Essex County

Decided March 30, 1987.

*Robert T. Pickett,* pro se.

*Richard B. McGlynn,* for defendant (*Stryker, Tams & Dill,* attorneys).

## OPINION

McGRATH, J.S.C.

### Procedural History

This is an action brought in Essex County on an Order to Show Cause and Verified Complaint by Robert T. Pickett against Earl Harris, individually and in his official capacity as Surrogate of Essex County. It should be noted at this point that Mr. Pickett is an attorney, appearing pro se.

On January 21, 1987, the Honorable John A. Marzulli, Assignment Judge, Superior Court, Essex County, signed the Order to Show Cause, ordering the defendant to appear on February 2, 1987 at 9:00 a.m. before this Court, specially assigned to hear the matter in Essex County. After discussions with counsel, for the convenience of the Court, the situs of the hearing was moved to Union County.

Subsequently, both parties agreed to adjourn the return date of the Order to Show Cause until February 17, 1987 in order that a petition could be filed by the defendant, pursuant to *R.* 1:17-1, through the Administrative Director of the Courts, seeking the written approval of the Supreme Court to continue to serve as Councilman-at-Large for the City of Newark and Surrogate of Essex County. The petition was delivered to the Supreme Court on February 6, 1987. On February 17, 1987, the return date of the Order to Show Cause, the action, over the objection of the plaintiff, was stayed pending the outcome of the matter then before the Supreme Court. On February 18, 1987, the Supreme Court ordered that "pending the disposition of the Superior Court proceedings, the petition is denied, without prejudice to the petitioner seeking leave to renew the within application upon the conclusion of the Superior Court proceedings." *In re Earl Harris, Surrogate of Essex County* (1987). Thereafter, on February 23, 1987, the Superior Court vacated the stay and scheduled the return date of the Order to Show Cause for March 9, 1987.

In the Order to Show Cause, the relief requested is: (1) declaring the defendant's holding of two elective offices to be in violation of *R* 1:17–1; (2) enjoining the defendant from holding two elective public offices in violation of *R.* 1:17–1; (3) requiring the defendant to choose which elective public office he wishes to continue to hold consistent with *R.* 1:17–1; (4) requiring the defendant to reimburse the County of Essex or the City of Newark for any and all salary paid to him while holding two elective public offices in violation of *R.* 1:17–1; (5) awarding counsel fees and costs of the application and; (6) seeking such further relief as the Court deems equitable and just.

In the Verified Complaint, Pickett, a resident and taxpayer of Newark and Essex County alleges that Harris, a resident and taxpayer of Newark and Essex County, was elected to the Office of Surrogate of Essex County on or about November 4, 1986 and was sworn in on January 1, 1987. Pickett alleges that at the same time Harris is also a Councilman-at-Large for the City of Newark, Essex County, pursuant to *N.J.S.A.* 40:69A–107, and has held that position since July 1, 1986. It is this dual officeholding that plaintiff alleges violates *R.* 1:17–1. He further contends that the taxpayers and citizens of the City of Newark and the County of Essex are irreparably harmed as such. The relief requested in the complaint is substantially the same as that requested in the Order to Show Cause. The defendant, in response to the Order to Show Cause, made a motion to dismiss the complaint for lack of subject matter jurisdiction, plaintiff's lack of standing and failure to state a cause of action upon which relief could be granted.

On the return date of the Order to Show Cause limited facts were stipulated by the parties, the defendant was ordered to file an answer to the complaint, and both parties were ordered to submit any additional memoranda by March 13, 1987.

### Facts

The defendant, Earl Harris, was elected to the office of Councilman-at-Large for the City of Newark from July 1, 1970

to June 30, 1974, again from July 1, 1974 to June 30, 1978, and again from July 1, 1978 to June 30, 1982. He was recently elected to his current term on July 1, 1986. (Certification of Robert P. Marasco, City Clerk of Newark, dated March 6, 1987). At the present time that position commands an annual salary of $28,000 plus an expense fund estimated at $9,000–10,000, and includes a car for the use of the incumbent, which Mr. Harris is currently using. In November, 1986 Mr. Harris was elected Surrogate of Essex County and was sworn in on January 1, 1987, at an annual salary of $50,000. There is also a car for use by the Surrogate, which Mr. Harris does not use. Mr. Harris is a resident of Newark and Essex County, residing at 555 Mt. Prospect Ave., Newark. Mr. Pickett, the plaintiff, is a resident and taxpayer of Newark and Essex County, residing at 90 Keer Avenue, Newark. There are no allegations in any pleadings, briefs or memoranda that Mr. Harris has not or is not performing in both positions admirably, albeit allegedly in violation of *R.* 1:17–1.

It is the contention of the defendant that there are two preliminary questions to be addressed by this Court, those being whether there is in fact subject matter jurisdiction vested in this Court and whether there is standing by the plaintiff to bring this action.

■■ Both in opposition to the Order to Show Cause and Complaint and in support of the motion to dismiss the Complaint, the defendant takes the position that it is the Supreme Court which must enforce rules of practice, procedure and administration and that the Superior Court jurisdiction rests exclusively on the common law, statute or the Constitution. While this matter was extensively briefed, what counsel for both defendant and plaintiff have failed to consider is another rule promulgated by the Supreme Court. *R.* 1:18, *Duty of Judges:*

> It shall be the duty of *every* judge to abide by and to *enforce* the provisions of the Disciplinary Rules of the Code of Professional Responsibility, the Code of

Judicial Conduct and the provisions of *R.* 1:15 and *R.* 1:17. [Emphasis supplied.]

In *Perazzelli v. Perazzelli,* 147 *N.J.Super.* 53 (Ch. Div. 1976), the Court, *sua sponte,* removed an attorney representing one of the litigants pursuant to the Code of Professional Responsibility, *DR* 5–101 and 102, saying, "This Court has the jurisdiction and the obligation to compel the enforcement of the disciplinary rules." *Id.* at 60. This holds true for the Code of Judicial Conduct and the rule provisions specifically provided for. Both *R.* 1:15 and *R.* 1:17 set limits on judges and surrogates, among others, regarding, on the one hand, the private practice of law and, on the other, any political activity. This Court is required by *R.* 1:18 to enforce the provisions of *R.* 1:17 and is therefore vested with subject matter jurisdiction. The issue of standing by the plaintiff by virtue of *R.* 1:18 is irrelevant as that rule obviates the traditional rules of standing, and standing by this particular plaintiff is unnecessary.

*R.* 1:17 *Judges and Court Personnel: Limitation on Political Activity, Holding of Other Public Office or Position and Other Gainful Pursuit*

*R.* 1:17–1 *Persons Prohibited*

The following persons in or serving the judicial branch of government shall not hold any elective public office nor be a candidate therefore, nor engage in political activity, nor, without prior written approval of the Supreme Court, requested through the Administrative Director of the Courts, hold any other public office, position or employment:

(g) Surrogates, except such political activity as is directly related to seeking reelection.

Paragraph (g) was amended effective June, 1983 because: [T]he exception of surrogates from the constraints of this rule had been a matter placed in serious question by *Clark v. DeFino,* 80 *N.J.* 540, [539], 548 (1979), in which the Supreme Court indicated its intent to consider rule amendment to preclude a surrogate from holding any political activity except that related to seeking reelection subject to the limited exception made for those surrogates who took permitted political action prior to June 1, 1983. [*Pressler, Current N.J. Court Rules,* Comment 1:17–1.]

The limited exception applied to surrogates who had filed for election to another office or had been elected to another office prior to June 1, 1983. As such those surrogates were permitted to engage in political activity related to seeking

or serving in that other office but were not permitted, while serving as surrogate, to seek reelection to that other office, nor if continuing in that other office to seek reelection as surrogate. Mr. Harris does not fall within the ambit of this exception.

In *Clark v. DeFino,* the Court had to consider whether the surrogate of Hudson County was in violation of either the New Jersey Constitution, the statutory or common law of the State, or the Code of Judicial Conduct, as implemented in Rule 1:17–1, by running for reelection as Commissioner of the Town of West New York. DeFino had been elected surrogate in November 1976 for a five-year term, while also serving as commissioner. He was nominated to run for reelection as commissioner in March 1979, and suit was brought to challenge that nomination on the grounds that as surrogate, DeFino was not eligible for candidacy for another elective public office. *Id.* at 542. The trial court held that DeFino's status as surrogate did not prohibit him from running for the other elective office, viewing a 1978 amendment to *N.J.S.A.* 2A:11–2 as a clear indication of legislative purpose to exclude surrogates from the prohibition against candidacy for political office by the judiciary. *Id.* at 544. It is important to note, of course, that at the time *DeFino* was decided *R.* 1:17–1 prohibited judges and court personnel from engaging in political activity but that the rule was specifically made non-applicable to surrogates by what was, at that time, *R.* 1:17–2, which read "Rule 1:17–1 shall not apply to surrogates." *Id.* at 547. The trial court cited the Supreme Court's then-recent decision in *In re Conda,* 72 *N.J.* 229 (1977), holding that "the policy against a surrogate's political activity outside his office was hortatory not mandatory." *DeFino,* 80 *N.J.* at 544. But it was because of this specific exception that the Court in *DeFino* said:

> There is a strong public policy in this State against judges, including Surrogates, engaging in political activity or becoming candidates for elective public office. The judicial branch of government must operate free of political involvement if it is to fulfill its constitutional purpose. That is the thrust of Canon 7 of the Code of Judicial Conduct. [80 *N.J.* at 547.]

Because *R.* 1:17–2 did not limit the political activity of surrogates to only the extent of seeking reelection to that office, the Court, finding that the "spirit of the Code (of Judicial Conduct) and the Rule (1:17–1) is otherwise", while upholding the trial court, referred *R.* 1:17–2 to the Civil Practice Committee for modification recommendations to reflect the Court's concerns expressed in its opinion. *Id.* at 547.

The judiciary's concerns about promulgating and enforcing *R.* 1:17–1 are expressed in *Matter of Randolph,* 101 *N.J.* 425 (1986). In a per curiam decision, the Court said, "One of the great reforms of the judicial article of the 1947 New Jersey Constitution was the complete separation of politics from the judiciary." *Id.* at 427. This case involved a court officer who petitioned the Court for permission to continue to hold appointive offices on the Monmouth County Mental Health Board, the Freehold Borough Municipal Youth Guidance Council and the Freehold Borough Citizens Participation Committee for HUD. In the decision denying such permission the Court cited three major areas of concern: "(1) involving the judicial employee in important and recurring public issues that are frequently the subject of political controversy; (2) giving the impression of judicial involvement in those issues; and (3) creating the appearance of a judiciary lacking in impartiality either in general or on such social or political issues, (and) these activities interfere with the paramount responsibility of the judiciary to maintain the independence of its members and employees in both fact and appearance." *Id.* at 427, 428.

The Court emphasized "New Jersey's unique commitment to an independent judiciary." *Id.* at 433. What hangs in the balance is the public perception of an independent judiciary as well as independence in fact. "As long as the public remembers the judicial employee's activity in a controversial political issue, that person and the court are stamped with that memory. It is that stamp of partisanship that cannot be eradicated." *Id.* at 451. A surrogate is a "judicial officer performing important

judicial ·functions in our Court system". *Clark v. DeFino,* 80 *N.J.* 539, 546 (1979).

As councilman-at-large, being embroiled in political controversy is Mr. Harris' bread and butter. Without asserting a political stance he cannot survive in that position. Can a resident of Essex County appear before the Surrogate, knowing he is also a city councilman, and think that he is an independent member of the judiciary? I think not. It is precisely this juxtaposition of allegiances, either real or perceived, which the Court and indeed the citizens of our nation have long abhored. "The founders of our institutions, deeply distrustful of judges beholden to the Crown, sought to guarantee forever liberty under our law. To preserve their freedoms, they created three branches of government and vested executive, legislative and judicial powers in these separate agencies to guarantee the independence of each." *Matter of Randolph,* 101 *N.J.* 425, 433 (1986). Since the office of surrogate is an elective office, the court rule, recognizing the necessity of political activity, carves out an exception for surrogates and makes allowance for political activity connected with seeking reelection to that office, but, of necessity, limits such political activity to that particular situation.

The position of surrogate is, indeed, as defendant points out, constitutionally mandated. *See N.J. Constitution, Article VII, Section II, paragraph II.* The surrogate, *for a misdemeanor committed during continuance in office,* is liable to impeachment. *N.J. Constitution Article VII, Section III, paragraph I.* [Emphasis supplied.] But there are no allegations that the defendant has committed any misdemeanor. Rather, the sole allegation is that the defendant, while serving as surrogate, holds another elective office in violation of *R.* 1:17–1. That rule indicates that he cannot engage in political activity or hold another elective office and that is precisely what the defendant has done and is doing. Once the defendant became the surrogate, he became a member of the judicial branch of government and as such subjected himself to its strictures, including the

Rules of Court. Under *R.* 1:18, this Court is required to enforce *R.* 1:17–1 and Mr. Harris must either resign as surrogate or resign as city councilman.

As to the issue of reimbursement, or, in point of fact, restitution, to either the city or the county, raised in the Order to Show Cause and Complaint, depending upon what action the defendant elects to take as a result of this judgment, it should be noted that the Court is of the opinion that Mr. Harris did not intentionally violate *R.* 1:17–1. This being so, he was mistaken as to his right to retain both offices. From the date of this judgment, however, it cannot be said that he will be under any mistaken impression as to his rights. Since he began his dual officeholding on January 1, 1987, the defendant has received the benefit of both offices' salary and benefits (whatever they may have amounted to in terms of actual receipt). But by the same token, the citizens of both the city and county have received the benefits that enured to them as a result of his performance of services in each of these particular offices. To require the defendant to make restitution of any salary or benefits received in connection with the office he elects to abandon would be to unjustly enrich the particular entity that he has innocently served for that period. "The principles by which one is entitled to restitution are the same whether the proceeding is one at law or in equity since restitution is based not upon contract or statute, but upon justice, morals, equity and good conscience. Unjust enrichment is usually a prerequisite for the enforcement of the doctrine of restitution; if there is no basis for unjust enrichment, there is no basis for restitution. It is said to be fundamental that for a person to be entitled to restitution, he must show not only that there was unjust enrichment, but also that the person sought to be charged had wrongfully secured a benefit, or had passively received one which it would be unconscionable for him to retain." *66 Am Jur 2nd, Restitution and Implied Contracts, S.4.* Obviously neither the city nor the county could conscionably seek restitution from Mr. Harris. He has served the

people of the county and the City of Newark and in return for that service he should receive remuneration. This has been done and he has neither wrongfully received that remuneration nor is it unconscionable for him to retain it.

As to the matter of costs and counsel fees, this Court is aware of no rule or statute that would allow any award in cases of this type.

Plaintiff shall submit an appropriate form of Order.