219 N.J. Super. 253 (1987)
530 A.2d 319
ROBERT T. PICKETT, PLAINTIFF-RESPONDENT,
v.
EARL HARRIS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SURROGATE OF ESSEX COUNTY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1987.
Decided July 2, 1987.
*254 Before Judges FURMAN, DREIER and SHEBELL.
Richard B. McGlynn and Richard A. Crooker argued the cause for appellant (Stryker, Tams & Dill, Attorneys; Mr. McGlynn, of counsel and on brief; Mr. Crooker, on the brief).
Robert T. Pickett argued the cause pro se.
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from an order of the Law Division directing him to vacate one of his two elected offices, Surrogate of Essex County or Councilman-at-large of the City of Newark. The trial judge based his decision upon a perceived duty under R. 1:18 to enforce R. 1:17-1(g), prohibiting a Surrogate from *255 holding another elective public office and from all political activity except as directly related to seeking reelection.
Defendant has raised four issues, with subparts. He first attacks the subject-matter jurisdiction of the Superior Court, contending that neither R. 1:18 nor the general rule-making power of the Supreme Court can confer subject-matter jurisdiction upon the court. The second point challenges plaintiff's standing. The third issue contests the constitutionality of the trial court's direction to defendant to resign one of his two offices in three aspects: its applicability to a municipal councilman; its establishment of a remedy in addition to impeachment for removal of a constitutional officer; and its alleged violation of the separation of powers provision of the Constitution. The last issue alleges a general violation of the rights of defendant and the electorate.
The facts giving rise to this litigation are relatively simple. Defendant, then a councilman-at-large of the City of Newark, ran for and was elected to the office of Surrogate of Essex County in November 1986. He took office January 1, 1987 for a five-year term expiring December 31, 1991. His four-year term as a councilman will expire June 30, 1990. He avers that he does not plan to seek reelection as a councilman and, therefore, will not run for election for another public office while holding the office of surrogate. He receives annual salaries of $28,000 for his city council position and $50,000 as surrogate. Neither position is required to be full-time.
Plaintiff is an attorney-at-law of New Jersey and a resident and taxpayer of the City of Newark. He contends that his sole interest in initiating this action was to vindicate the public interest, since he perceived that defendant held the office of surrogate in direct violation of R. 1:17-1(g).
Under the New Jersey Constitution of 1947, county surrogates are elected constitutional officers who serve a five-year term. N.J. Const. (1947), Art. VII, § II, par. 2. Surrogates' functions and procedures, which are governed by statute, see *256 N.J.S.A. 2A:5-1 et seq., include the probate of wills, issuance of letters of administration of estates, appointment of guardians, filing and clerical administration of various Superior Court matters (including adoptions and accountings) and supervision of pools of money awarded to minors resulting from litigation but which cannot be distributed until the minor reaches 18. Where a dispute arises in any matter, such as whether the technical requirements for a will are satisfied, the surrogate relinquishes jurisdiction and the issue is litigated in the Superior Court. See In re Conda, 72 N.J. 229, 233-234 (1977); and see generally N.J.S.A. 2A:3-1 to 2A:3-7.
In his March 30, 1987 opinion granting judgment for plaintiff, 219 N.J. Super. 402, the trial judge observed that the Superior Court was required by R. 1:18 to enforce the restrictions set forth by R. 1:15 and 1:17 on judges and surrogates concerning private practice of law and political activity and, therefore, had subject matter jurisdiction over the action brought by plaintiff. Noting that "being embroiled in political controversy is Mr. Harris' bread and butter" in his city council post, the trial judge determined that defendant would not be able to avoid a "juxtaposition of allegiances, either real or perceived" between his city council position and his role as judicial officer. The trial court cited In the Matter of Randolph, 101 N.J. 425, cert. den. ___ U.S. ___, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986), to illustrate the concern of the New Jersey Supreme Court and of the drafters of both the New Jersey and Federal Constitutions over the separation of politics from the judiciary. Because defendant was mistaken as to his right to hold the two offices simultaneously and did not intentionally violate R. 1:17-1, the court determined that Harris would not be required to reimburse either Essex County or the City of Newark for salaries he received for whichever of the two offices he chooses to resign. Plaintiff has not cross-appealed from this latter determination.
After plaintiff initiated this lawsuit, defendant petitioned the New Jersey Supreme Court, requesting that he be granted *257 permission to continue to hold both offices concurrently until the end of his current city council term. The Supreme Court denied this petition without prejudice on February 18, 1987 pending the disposition of the Law Division proceedings, permitting defendant to seek "leave to renew the ... application upon the conclusion of the Superior Court proceedings."[1]
Article VI, § VI, par. 7 of the 1947 Constitution forbids Supreme Court Justices and Superior Court Judges from holding any other office or position of profit, and states: "Any such Justice or Judge who shall become a candidate for an elective public office shall thereby forfeit his judicial office." N.J.S.A. 2A:11-2 provides: "A judge of any court of this State, who becomes a candidate for an elective public office, thereby forfeits his judicial office, but this section shall not apply to a surrogate." N.J.S.A. 19:3-5 requires that a surrogate not hold specified other offices, but municipal councilman is not one of them. The Supreme Court, therefore, has relied upon the general authority of Art. VI, § II, par. 3 and § 7, par. 1 of the Constitution, which give it the power to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts," and establish the Chief Justice as the "administrative head of all the courts in the State," as the bases for its power to govern the activities of the surrogate. It is beyond question that the surrogate, although a constitutional officer, is also a judicial officer and, therefore,

*258 subject both to the administrative oversight of the Chief Justice and the Supreme Court, see Constitution of 1947, Art. VI, Section II, par. 3, Section VII, par. 1 and to the strictures of the Code of Judicial Conduct so far as not necessarily inconsistent with his constitutional status as an elective officer. [In re Conda, supra, 72 N.J. at 234].
See also Clark v. DeFino, 80 N.J. 539, 547 (1979). As a judicial officer the surrogate is subject to the rules governing his conduct specified in R. 1:17-1[2]. Although defendant has urged to the contrary, it is beyond our competence as an intermediate appellate court to question this principle in view of the express administrative rule and decisions of the Supreme Court.
Under Art. VI, § V, par. 4 of the 1947 Constitution, the Superior Court has jurisdiction to hear and review all actions in lieu of prerogative writs, one of which was the former writ of quo warranto. The exercise of this right is described in N.J.S.A. 2A:66-6:
A proceeding in lieu of prerogative writ may also be instituted as of right against any person for usurping, intruding into or unlawfully holding or executing any office or franchise in this state, by any person who, under the former practice, would have the requisite interest to exhibit an information in the nature of a quo warranto with the leave of court.
In bringing such an action, a plaintiff need not be seeking the office in question. This court in Demoura v. Newark, 74 N.J. Super. 49, 60 (App.Div. 1962) stated:
A proceeding in the nature of quo warranto, involving a municipal office or position, must ... be brought by a citizen and taxpayer of the city unless he himself is a claimant of the office.
As stated in Burnson v. Evans, 137 N.J.L. 511, 514 (Sup.Ct. 1948):
The object of prosecuting an information in the nature of a quo warranto is to have the possessor of the office adjudged guilty of usurpation and ousted.... *259 Where the incumbent of an office was ineligible at the time of his appointment, the proper method to oust him is by quo warranto.

There appears to be no question that plaintiff as a citizen and taxpayer of the County of Essex has the right to institute an action in the Superior Court in lieu of prerogative writs to challenge defendant's title to the office of surrogate[3]. We, therefore, must determine whether the Supreme Court rule forbidding the dual office holding and political activity affects defendant's title to his office or merely subjects him to the administrative oversight and discipline of the Supreme Court.
It at least appears that a quo warranto challenge could be mounted if defendant had not lawfully been elected to his office, was not a resident or legal voter of the county, or did not possess other qualifications of his office[4] at the time of his election. N.J.S.A. 19:13-8. Yet we must determine whether a violation of a court rule affects the qualification to hold office as opposed to subjecting the alleged offender to such manner of discipline as the Supreme Court may determine. We conclude that Harris' violation of R. 1:17-1 does not affect his qualification to hold the office of Surrogate.
While R. 1:18 requires a Superior Court judge to enforce the disciplinary rules, including R. 1:17-1, it does not authorize the judge to add a qualification to a constitutional office, nor does it permit a judge to entertain a cause of action for a private litigant that has no common law, constitutional or statutory basis. A rule promulgated by the Supreme Court pursuant to its administrative and disciplinary functions does not affect the title to the Surrogate office. The Constitution and Legislature establish a Surrogate's qualifications and responsibilities. *260 Nevertheless enforcement of R. 1:17-1 with respect to the discipline of such an officer who is a member of the judiciary lies with the Supreme Court or a disciplinary panel. Were this rule otherwise, one Superior Court judge could remove another upon an allegation of dual office holding or political activity under the parallel provisions of R. 1:17-1(a), a result clearly not intended by the Rules. A judge discharges his or her duty under R. 1:18 by referring the matter to the Supreme Court or in cases of an attorney's ethics violation to the Office of Attorney Ethics.
Plaintiff has urged that in Clark v. DeFino, supra, the dual office holding complaint was prosecuted by a citizen taxpayer without the Supreme Court challenging the jurisdiction of the trial court or the standing of plaintiff. Yet it is apparent from that opinion that the issues of standing and jurisdiction were neither raised nor determined. We note further that direct applications have been made to the Supreme Court in other matters in which rules of the Supreme Court have either been enforced, challenged or relaxed. See In the Matter of Randolph, supra, 101 N.J. at 429; In re Conda, supra; In re Gaulkin, 69 N.J. 185 (1976). We determine, therefore, that any challenge to the constitutionality of R. 1:17-1(g) or the enforcement or relaxation of the rule with respect to defendant's acknowledged dual office holding or political activity while serving as a member of the Newark City Council is within the exclusive province of the Supreme Court.[5] *261 We so hold without expressing any disapproval of the conclusions reached by the trial judge.
The judgment of the Law Division is reversed and plaintiff's complaint is dismissed without prejudice to plaintiff's petitioning the Supreme Court for the enforcement of R. 1:17-1(g) as to defendant's dual office holding or to defendant's renewal of his petition for the relaxation of the rule.
FURMAN, P.J.A.D. (dissenting).
I would affirm substantially for the reasons stated by Judge McGrath in his opinion published at 219 N.J. Super. 402 (Law Div. 1987). The majority reverses and dismisses the complaint for lack of subject matter jurisdiction in the Superior Court. I respectfully differ.
The prohibition against political activity by a Surrogate, including dual office holding, is set forth expressly in R. 1:17-1. R. 1:18 provides:
It shall be the duty of every judge to abide by and to enforce the provisions of the Disciplinary Rules of the Code of Professional Responsibility, the Code of Judicial Conduct and the provisions of R. 1:15 and R. 1:17.
Enforcement of R. 1:17-1 under R. 1:18 would be by judgment or order banning political activity, including dual office holding. The proscription of the rule applies not only to Surrogates and Judges but to all public employees regularly assigned to a judge or a court. It seems to me an unduly restrictive construction that the Supreme Court, in adopting R. 1:17-1 and 1:18, intended that it alone was vested with jurisdiction to hear and determine complaints of violations of R. 1:17-1, not the Superior Court, the court of original general jurisdiction in all causes, N.J. Const. (1947) Art. VI, § II, par. 2. I would find subject matter jurisdiction over this litigation vested in the Superior Court by R. 1:18.
I agree with the majority that the Supreme Court, in denying defendant's petition, did not remand for fact finding by the Superior Court, as it did in Matter of Randolph, 101 N.J. 425 *262 (1986) and in American Trial Lawyers v. N.J. Supreme Ct., 126 N.J. Super. 577 (App.Div. 1974), aff'd, 66 N.J. 258 (1974). Nevertheless, I would interpret the Supreme Court order as a recognition of Superior Court subject matter jurisdiction.
The majority suggests that the Supreme Court may have contemplated only a dismissal on motion for lack of jurisdiction over the proceedings pending in the Superior Court. Withholding exercise of its own jurisdiction solely to await a dismissal below would have been futile, delaying adjudication of the complaint of a violation of R. 1:17-1 for no discernible purpose.
A more practical purpose for the Supreme Court's declining to exercise jurisdiction may have been, as the majority also suggests, to permit the resolution of factual issues at the trial level. No such factual issues were pressed; plaintiff has disclaimed any attack on defendant's dual office holding other than for violation of R. 1:17-1. Judge McGrath noted in his opinion:
There are no allegations in any pleadings, briefs or memoranda that Mr. Harris has not or is not performing in both positions admirably, albeit allegedly in violation of R. 1:17-1.
I would hold, however, that the complaint in the Law Division would have supported an evaluation that there were factual issues to resolve, specifically the allegation that the "taxpayers and citizens of the City of Newark and County of Essex are irreparably harmed by defendant's continue [sic] holding of two elective public offices which both require his full-time attention and service." By necessary implication that paragraph of the complaint sets out a cause of action for removal from one of two offices based upon their factual incompatibility.
If the Supreme Court in denying defendant's petition deferred exercise of its own jurisdiction pending factual resolutions below, it would have been following the same course as in Matter of Randolph, although in a different procedural context. Assuming that it did, I would not strike down the decision below for lack of jurisdiction. It is immaterial that the trial court ultimately concluded that no factual issues were *263 raised; it reached a decision on the merits, with which I would agree. In my view, jurisdiction was vested in the Superior Court both under R. 1:18 and by delegation or deferral by the Supreme Court.
NOTES
[1] Although plaintiff contends that this order at least implicitly recognizes the jurisdiction of the Superior Court to determine the issues before it, we read the order merely to recognize the pendency of the proceedings which could have been concluded by the granting of a motion to dismiss for lack of jurisdiction or upon the resolution of factual issues, discussed infra, encompassed by the pleadings. When the Supreme Court considered defendant's petition, defendant had not yet made his motions in the Law Division to dismiss the pending action on the basis of the lack of subject matter jurisdiction, lack of standing and for failure to state a claim for which relief could be granted.
[2] He also is a constitutional officer and thus is subject to impeachment for the commission of a misdemeanor. N.J. Const. (1947) Art. VII, § II, par. 2; Art. VII, § III, par. 1. The surrogate apparently is subject to Superior Court investigative oversight pursuant to N.J.S.A. 2A:5-22 at least insofar as the county-related functions of the Surrogate's Office. Cf. Application of Burlington Cty. Bd. of Chosen Freeholders, 99 N.J. 90, 100-101 (1985). Yet, certainly a breach of the court rule is not a misdemeanor conferring impeachment power upon the Legislature.
[3] We also note that under N.J.S.A. 19:3-23 the Attorney General may also institute a proceeding in lieu of prerogative writs to remove from office a person whose nomination or election is void under the provisions of Title 19.
[4] If the surrogate fails to file the appropriate bond pursuant to N.J.S.A. 2A:5-2 or execute his oath of office required by N.J.S.A. 41:1-2, his authority to hold the office might likewise be challenged.
[5] We further note that plaintiff's original complaint urged that all or a portion of the salary received by defendant for the two positions should be returned, and that by virtue of the demands of his municipal position defendant was not giving the requisite time and attention to discharge of the duties of the surrogate's office. These matters have not been pursued by plaintiff and thus have no bearing on the issues before us. The presence of these allegations in the Superior Court action, however, may have been the basis upon which the Supreme Court determined that the Law Division proceeding should be concluded prior to any renewal of defendant's petition for relief from the application of R. 1:17-1(g).