839 A.2d 67 (2003)
365 N.J. Super. 267
STATE of New Jersey, Plaintiff-Respondent,
v.
Mohammad Saleem MALIK d/b/a Haji Saleem, a/k/a Mohammad Saleem, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2003.
Decided December 30, 2003.
*70 Jean M. Hartmann, Stanton Island, NY, argued the cause for appellant (Franzblau Dratch, attorneys, Livingston; Ms. Hartmann, of counsel, and on the brief).
Joie Piderit, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General of New Jersey, attorney; Ms. Piderit, of counsel, and on the brief).
Before Judges NEWMAN, PARRILLO and HOENS. *68
*69 The opinion of the court was delivered by PARRILLO, J.A.D.
At issue is the interpretation of N.J.S.A. 2C:21-9(c), which defendant contends contains a criminal proscription against corporate misconduct that is unconstitutionally vague as applied to individuals other than corporate officers and directors at whom, he maintains, the statute is exclusively directed. We disagree and find no constitutional infirmity in the provision in issue, the clear language of which, we hold, reaches defendant's conduct in this case.
Defendant Mohammad Saleem Malik and others were indicted for second-degree conspiracy to commit Medicaid fraud, N.J.S.A. 30:4A-17(c), N.J.S.A. 2C:5-2, and N.J.S.A. 2C:21-9(c) (count one); third-degree Medicaid fraud, N.J.S.A. 30:4D-17(c), N.J.S.A. 2C:2-6, and N.J.S.A. 2C:2-7 (count two); and second-degree misconduct by a corporate official, N.J.S.A. 30:4D-17(c), N.J.S.A. 2C:2-6, and N.J.S.A. 2C:21-9(c). Evidence before the grand jury established that defendant, his brother, co-defendant, Iftikhar Hussain, and another co-defendant, Abdul Hafeez Raja, owned and controlled Venditti Clinical Laboratory, Inc. (V.C. Lab), a Medicaid provider that performed diagnostic tests on blood samples and received reimbursement from the government-funded health care program for these services. The proofs also demonstrated that for nine months in 1994 and 1995, defendant and co-defendants operated V.C. Lab in furtherance of a kickback scheme. Specifically, defendant and his cohorts used payments received from the Medicaid program for performing diagnostic blood tests to fund kickbacks to medical clinics and laboratories that provided blood samples to V.C. Lab for testing, in exchange for continuing to submit samples. The kickbacks totaled $346,980, consisting of $233,595 to fictitious accounts operated by Zahid Ilyas, a *71 cooperating witness, and $113,385 to King Consultants (King) a company owned and operated by two other cooperating witnesses, Shakir Siddiqui and Mohammed Arif, who, through King, owned Specialty Clinical Laboratory and Precise Medical Laboratory, both suppliers of blood specimens to V.C. Lab. There was no competent proof, however, that defendant held any corporate office in V.C. Lab.
Defendant moved pre-trial to dismiss count three and also to dismiss the part of count one that related to count three, on the ground that N.J.S.A. 2C:21-9(c) did not apply to him because it covers only corporate officers and directors, and he held neither position. The court denied the motion.
Eventually, defendant and the State entered into a plea agreement wherein defendant would plead guilty to counts two and three in exchange for the State's recommendation to dismiss count one; to treat the second-degree crime alleged in count three as a third-degree offense for purposes of sentencing; and to impose concurrent "flat sentences" on each count without a parole bar and a fine not to exceed $5,000. Defendant also agreed "to be debarred from Medicaid and related programs for 5 years." Moreover, defendant reserved the right to appeal the denial of his motion to dismiss.
At the plea hearing, defendant admitted the occurrence of the activities on which the indictment was based and his participation in them. In response to the inquiry "did you use[,] control[,] or operate" the corporation in those illegal activities, defendant acknowledged that he had. Accordingly, defendant's guilty plea was accepted.
Consistent with the plea bargain, defendant was sentenced to a five-year term on count three and a concurrent three-year term on count two. Appropriate fees and a $5,000 fine were also imposed. The judgment of conviction also recited that "[d]efendant is barred from any activity in [the] Medicaid Program" without indicating, however, that the debarment period, according to the plea agreement, was limited to five years.
Defendant now appeals, repeating his argument that N.J.S.A. 2C:21-9 imposes liability only on corporate officers and directors, and adding new claims that the statute is unconstitutional, all issues of first impression in this State. He also asserts errors in sentencing. Specifically, the issues presented for our consideration are:
I. N.J.S.A. 2C:21-9 REQUIRES AN OFFENDER THEREOF TO BE A CORPORATE OFFICIAL: AS DEFENDANT-APPELLANT WAS NOT A CORPORATE OFFICIAL, HIS CONVICTION UNDER THAT STATUTE CANNOT BE SUSTAINED.
II. DEFENDANT'S CONVICTION UNDER N.J.S.A. 2C:21-9 VIOLATES DUE PROCESS. (U.S. CONST. AMEND. V, XIV; N.J. CONST. OF 1947 ART I, § 10).
III. EVEN IF N.J.S.A. 2C:21-9(C) IS INTERPRETED TO APPLY TO ALL PERSONS AND NOT JUST CORPORATE OFFICIALS, ITS ENACTMENT VIOLATED N.J. CONST. ART. IV, SEC. 7, PAR. 4 AND DEFENDANT'S CONVICTION THEREUNDER CANNOT BE UPHELD.
IV. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE AND THE LOWER COURT ERRED IN ITS FINDINGS OF THE APPLICABLE STATUTORY AGGRAVATING AND MITIGATING FACTORS.

*72 V. THE LOWER COURT, CONTRARY TO THE TERMS OF THE PLEA AGREEMENT IT ACCEPTED, ERRONEOUSLY ISSUED A JUDGMENT OF CONVICTION STATING DEFENDANT-APPELLANT WAS BARRED FROM ANY ACTIVITY IN THE MEDICAID PROGRAM. (Not Raised Below).

I
We start, as we must, with the words of the statute because if the language is plain and its meaning clear, the inquiry ends there, our sole function being "to enforce [the statute] according to its terms." Sheeran v. Nationwide Mutual Ins. Co., Inc., 80 N.J. 548, 556, 404 A.2d 625, 629 (1979) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917)). The statute in issue here, N.J.S.A. 2C:21-9, reads in relevant part:
Misconduct by corporate official
A person is guilty of a crime when:
a. Being a director of a corporation, he knowingly with purpose to defraud, concurs in any vote or act of the directors of such corporation, or any of them, which has the purpose of:
(1) Making a dividend except in the manner provided by law;
(2) Dividing, withdrawing or in any manner paying to any stockholder any part of the capital stock of the corporation except in the manner provided by law;
(3) Discounting or receiving any note or other evidence of debt in payment of an installment of capital stock actually called in and required to be paid, or with purpose of providing the means of making such payment;
(4) Receiving or discounting any note or other evidence of debt with purpose of enabling any stockholder to withdraw any part of the money paid in by him on his stock; or
(5) Applying any portion of the funds of such corporation, directly or indirectly, to the purchase of shares of its own stock, except in the manner provided by law; or
b. Being a director or officer of a corporation, he, with purpose to defraud:
(1) Issues, participates in issuing, or concurs in a vote to issue any increase of its capital stock beyond the amount of the capital stock thereof, duly authorized by or in pursuance of law; or
(2) Sells, or agrees to sell, or is directly interested in the sale of any share of stock of such corporation, or in any agreement to sell the same, unless at the time of such sale or agreement he is an actual owner of such share, provided that the foregoing shall not apply to a sale by or on behalf of an underwriter or dealer in connection with a bona fide public offering of shares of stock of such corporation.
c. He purposely or knowingly uses, controls or operates a corporation for the furtherance or promotion of any criminal object.
....
[N.J.S.A. 2C:21-9 (emphasis added).]
The Legislature first enacted the statute with only the first two subsections. L. 1978, c. 95, § 2C:21-9. It did not change the title when it amended the statute three years later by changing the term "stock corporation" in subsections (a) and (b) to "corporation" and by adding subsection (c), L. 1981, c. 290, § 24, the provision in issue here.
Our function, of course, is to ascertain and implement the statute's meaning. *73 State v. Sutton, 132 N.J. 471, 479, 625 A.2d 1132, 1136 (1993). Where the statute is clear and unambiguous, the task is simple enough. On this score, a principal canon of statutory construction is that the words and phrases in the statute must be given their generally accepted and ordinary meaning, see N.J.S.A. 1:1-1; GE Solid State v. Dir., Div'n of Tax'n, 132 N.J. 298, 307-08, 625 A.2d 468, 472-73 (1993); Fahey v. City of Jersey City, 52 N.J. 103, 107, 244 A.2d 97, 99 (1968); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526, 197 A.2d 673, 675-76 (1964); Safeway Trails, Inc. v. Furman, 41 N.J. 467, 478, 197 A.2d 366, 371, cert. denied, 379 U.S. 14, 85 S.Ct. 144, 13 L.Ed.2d 84 (1964); State v. Joas, 34 N.J. 179, 187, 168 A.2d 27, 31 (1961), and must be examined not only in their own contextual setting, but in relation to surrounding provisions in the statutory scheme. State v. Mortimer, 135 N.J. 517, 536, 641 A.2d 257, 266 (1994), cert. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994). "There is a need to keep in view ... the structure of the statute, and the relation, physical and logical, between its several parts." Duparquet Co. v. Evans, 297 U.S. 216, 218, 56 S.Ct. 412, 413, 80 L.Ed. 591, 593 (1936).
Guided by these principles, the meaning of the provision in issue, N.J.S.A. 2C:21-9(c), is plain and clearly encompasses defendant's conduct as an owner, rather than an officer or director, of the corporation. The statute consists of a general introductory clause"a person is guilty of a crime when"and three independent, free-standing, but parallel subsections, each defining separate offenses. The first type of offense involves the dissipation of corporate assets and is made applicable only to directors because the criminal proscription involves breaches of corporate responsibilities peculiarly entrusted and reserved to directors. N.J.S.A. 2C:21-9(a). Thus, to be criminally liable, defendant's action must be taken in his or her capacity as a director, such as concurring in a board of directors vote, and must involve either the making of an unlawful dividend; paying the capital stock of the corporation to a stockholder in a manner not provided by law; discounting or receiving evidence of a debt in payment of an installment of capital stock called in and required to be paid or with the purpose of providing the means of making such a payment; receiving or discounting any evidence of indebtedness with a purpose of enabling a stockholder to withdraw part of the money paid in by him on the stock; or applying any portion of corporate funds, directly or indirectly, to purchase its own stock in a manner not provided by law. N.J.S.A. 2C:21-9(a)(1) to (5). As noted, the activities proscribed in paragraphs 1-5 of subsection (a) involve violations of corporate duties uniquely performed by company directors. See, e.g., N.J.S.A. 14A:7-2 (number and classes of shares are set by directors); N.J.S.A. 14A:7-14 (dividends are declared by directors); N.J.S.A. 14A:10-10 (directors must approve sale, lease, exchange, or other disposition of all or substantially all of corporation's assets).
The second type of corporate offense delineated in N.J.S.A. 2C:21-9 involves the improper issuance or sale of corporate stock and may be committed by either a director or an officer of the corporation. N.J.S.A. 2C:21-9(b). The fraud must be perpetrated by one of two methods. The first is the issuing, participating in the issuing or voting to issue an increase in the capital stock beyond the amount of capital stock duly authorized by law. N.J.S.A. 2C:21-9(b)(1). The second method is the selling, agreeing to sell or being directly interested in the sale of any share of corporate stock unless the defendant is the actual owner of the share at the time of the sale or agreement, or unless the *74 sale is by or on behalf of an underwriter or dealer in connection with a bona fide public offering. N.J.S.A. 2C:21-9(b)(2). As with subsection (a), subsection (b) addresses conduct that can only be performed by corporate officials. Cf. N.J.S.A. 14A:6-15 (officers manage the corporation).
In sharp contrast to the itemized listing of proscribed activities in subsections (a) and (b), the 1981 amendment added a third category of offense, generally and broadly prohibiting the use, control or operation of a corporation for the furtherance or promotion of any criminal object. N.J.S.A. 2C:21-9(c). And unlike subsections (a) and (b), whose proscriptions apply exclusively to the categories of corporate official specifically designated therein, subsection (c) uses the non-specific term "he", which, because of the very structure of N.J.S.A. 2C:21-9, has clear and obvious reference to the word "person" in the statute's introductory clause, defined elsewhere to include both corporations and individuals such as defendant herein. See N.J.S.A. 1:1-2.
Thus, subsection (c) expands the statutory reach to prohibit all "uses" of a corporation for a criminal purpose, and not just those objects enumerated in subsections (a) and (b) that are exclusively reserved to officers and/or directors. Obviously then, subsection (c) applies to all persons, such as owners and majority shareholders in a position to use, control or operate the corporation, because the more limiting interpretation suggested by defendant, to apply only to officers and directors, would render subsections (a) and (b) redundant, and therefore meaningless. Of course, it is not proper statutory construction to reach a result which would render a provision completely meaningless. See, e.g., Gabin v. Skyline Cabana Club, 54 N.J. 550, 555, 258 A.2d 6, 9 (1969). Moreover, the Legislature's exclusion of the limiting references to officers and directors that it carefully employed in subsections (a) and (b) demonstrates that it did not intend to limit subsection (c) in the same way. GE, supra, 132 N.J. at 307-08, 625 A.2d at 472-73. In other words, if the Legislature intended subsection (c) to require that the offender be an officer or director, it would have said so. We do not presume the Legislature intended something other than what it expressed by way of its plain language. State v. Wright, 107 N.J. 488, 495, 527 A.2d 379, 383 (1987).
Defendant's argument to the contrary, namely, that the canon of statutory construction known as ejusdem generis requires us to read the limitation at the beginning of subsection (a) or (b) into subsection (c), is without merit. Granted, that canon instructs that "`when general words follow specific words in a statutory enumeration, the general words are construed to embrace only the objects similar in nature to those objects enumerated by the preceding specific words.'" Stryker v. Dir., Div. of Tax'n, 168 N.J. 138, 155-56, 773 A.2d 674, 684 (2001) (quoting State v. Hoffman, 149 N.J. 564, 584, 695 A.2d 236, 246 (1997)). However, the canon applies only where the Legislature's "`expression is of doubtful meaning,'" and it is to be avoided "`where the legislative design is expressed in plain and unambiguous terms'" id. at 156, 773 A.2d at 684 (quoting Edwards v. Mayor of Moonachie, 3 N.J. 17, 23, 68 A.2d 744, 747 (1949)), as is the case here. Furthermore, the canon may not be used "`to defeat the legislative purpose revealed by the provision in its entirety, giving to all the terms their normal sense and significance....'" Id. at 159, 773 A.2d at 687 (quoting Edwards, supra, 3 N.J. at 23, 68 A.2d at 747). Here, the very structure of N.J.S.A. 2C:21-9, with its introductory clause and three succeeding *75 separate but parallel provisions, strongly indicate that subsection (c), which was added by independent amendment, does not "follow" subsections (a) and (b) in the subordinate sense that the canon requires. Rather, the proximate language to which the term "he" in subsection (c) is subordinate is clearly the word "person" in the introductory clause whose definition broadly encompasses defendant herein.[1]
Admittedly, the structure of N.J.S.A. 2C:21-9 also includes a title"Misconduct of Corporate Official"to which defendant ascribes dispositive significance in the statute's construction. We disagree. The title of a statute, more properly called its "headnote", is deemed not "to be a part of" it, N.J.S.A. 1:1-6, and the Legislature repeated this principle in its enactment of the Penal Code. N.J.S.A. 2C:1-1(g).
Even when the headnote is included in the text of the law as passed by the Legislature, it is not deemed dispositive. State v. Brown, 188 N.J.Super. 656, 661-62, 458 A.2d 165, 168 (Law Div.1983). In Brown, supra, where the phrase in issue appeared in a headnote that was included in the text of the statute when enacted, id. at 661, 458 A.2d at 168, the court nevertheless determined the statute's meaning and scope on an analysis of the legislative history and out-of-state decisions construing "substantially identical" statutes. Id. at 662-74, 458 A.2d at 168-76. Here, of course, the descriptive heading does not control the statute's interpretation, see, e.g., Chalmers v. Chalmers, 65 N.J. 186, 194-95, 320 A.2d 478, 483 (1974); N. Singer, Sutherland on Statutes and Statutory Construction, sections 18:11, p. 95 (6th Edition 2000), especially since the headnote was not enacted simultaneously with the amended statutory provision in issue. Cf. Brown, supra, 188 N.J.Super. at 661, 458 A.2d at 168.
We also recognize that penal statutes are to be strictly construed, State v. Valentin, 105 N.J. 14, 17-18, 519 A.2d 322, 323-24 (1987); State v. Biegenwald, 96 N.J. 630, 640, 477 A.2d 318, 323 (1984); In re Suspension of License of Marco, 83 N.J. 25, 36, 414 A.2d 1339, 1344-45 (1980); however, "`th[is] rule ... does not mean that the manifestations of the Legislature's intention should be disregarded.'" State v. Ferencsik, 326 N.J.Super. 228, 231, 741 A.2d 101, 102 (App.Div.1999) (quoting State v. Thomas, 322 N.J.Super. 512, 518, 731 A.2d 532, 536 (App.Div.1999)). See also State v. Carreker, 172 N.J. 100, 115, 796 A.2d 847, 855-56 (2002); State v. Edwards, 28 N.J. 292, 298, 146 A.2d 209, 212 (1958). Primary regard must be given to the fundamental purpose for which the legislation was enacted. State v. Hatch, 64 N.J. 179, 186, 313 A.2d 797, 800 (1973); State v. Brown, 22 N.J. 405, 415, 126 A.2d 161 (1956). "A construction of a penal statute that would unduly hinder the object and purpose of the law is not favored." State v. Marchiani, 336 N.J.Super. 541, 545, 765 A.2d 765, 767 (App.Div.), certif. denied, 168 N.J. 292, 773 A.2d 1156 (2001).
It seems clear that subsection (c) manifests a legislative intent to expand the scope of conduct interdicted "to cover the knowing and purposeful operation of a corporation for the furtherance or promotion of any criminal object," Statement to Senate Comm. Substitute for S.1537, § 26 (January 2, 1981), and by implication to expand the class of persons engaged in these activities beyond the traditional corporate group of officers and directors to include those individuals, such as defendant, *76 in a position to control or operate the company. In this regard, subsection (c) is distinct from subsections (a) and (b) which criminalize certain violations of corporate law, and is directed against, among other things, "organized crime use [sic] of corporations to further criminal objectives." Cannel, New Jersey Criminal Code Annotated, comment 2 to N.J.S.A. 2C:21-9 (2003). Given the clear wording of the statute, the purpose for which the amendment was enacted in 1981, and when considered in full context, it is difficult to perceive that the Legislature intended, by the language of N.J.S.A. 2C:21-9(c), to treat a "criminal object" as a crime only when committed by a corporate officer or director and not by, for instance, an owner or controlling shareholder. We find it even more difficult to imagine that the only indication that the Legislature would give of such an intent was the inference from its failure to change the headnote to reflect the amendment's prohibition of all criminal misuse of a corporation. We find absolutely no support for this position in either the statute or its legislative history. Rather, the statute's plain meaning compels just the opposite conclusion.

II
For these very same reasons, we also reject defendant's claim that N.J.S.A. 2C:21-9(c) is unconstitutionally vague as applied to him, an individual who is neither an officer nor director of the corporation through which the Medicaid fraud scheme was perpetrated. "A statute that is vague creates a denial of due process because of a failure to provide notice and warning to an individual that his or her conduct could subject that individual to criminal or quasi-criminal prosecution." State v. Hoffman, supra, 149 N.J. at 581, 695 A.2d at 245 (citing Screws v. United States, 325 U.S. 91, 101-02, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495, 1503 (1945)). Suffice it to say, there is no guessing as to whether defendant's conduct is criminal under the statute, State v. Lee, 96 N.J. 156, 166, 475 A.2d 31, 36 (1984); State v. Brady, 332 N.J.Super. 445, 450, 753 A.2d 1175, 1178 (App.Div.), certif. denied, 165 N.J. 606, 762 A.2d 220 (2000), because the plain language of the statute provides adequate notice of its scope, State v. Kittrell, 145 N.J. 112, 128, 678 A.2d 209, 216 (1996); State v. Cameron, 100 N.J. 586, 591, 498 A.2d 1217, 1219 (1985), and informs persons of ordinary intelligence that the conduct to which defendant pled guilty is prohibited. Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573, 590 (1983).

III
Defendant alternatively claims that if interpreted to reach individuals other than corporate officers and directors, then the statute violates the constitutionally-based "single object" rule, N.J. Const., Art. IV, § 7, ¶ 4, which provides that every law should embrace but one object and that shall be expressed in the title. Cambria v. Soaries, 169 N.J. 1, 10, 776 A.2d 754, 759 (2001). Specifically, the constitutional prohibition reads:
To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title. This paragraph shall not invalidate any law adopting or enacting a compilation, consolidation, revision, or rearrangement of all or parts of the statutory law.
[N.J. Const. art. IV, § 7, ¶ 4.]
Of course, the constitutional standard does not require that the title of the act index all its provisions. Rather, it is enough that the title expressed the general *77 purpose and all of the statute's provisions appear to be in furtherance of that purpose and appropriate to the end expressed. Ott v. Braddock, 119 N.J.L. 507, 511-12, 197 A. 271, 273-74 (E. & A.1938); Supermarkets General Corp. v. Sills, 93 N.J.Super. 326, 347, 225 A.2d 728, 740 (Ch.Div.1966). The constitutional standard is satisfied where the legislators are given notice "of the subject to which the act relates" and the public is informed "of the kind of legislation under consideration." Howard Sav. Inst. v. Kielb, 38 N.J. 186, 200, 183 A.2d 401, 408 (1962).
Indeed, there is "no question" that the Legislature may "proscribe two or more separate and distinct criminal acts within the same statute." State v. Juliano, 52 N.J. 232, 235, 245 A.2d 17, 18 (1968); State v. Butler, 112 N.J.Super. 305, 307, 271 A.2d 17, 18 (App.Div.1970). "`All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject.'" N.J. Ass'n on Corr. v. Lan, 80 N.J. 199, 215, 403 A.2d 437, 445 (1970) (quoting Johnson v. Harrison, 47 Minn. 575, 50 N.W. 923, 924 (1891)). The different parts of the statute may have any kind of "`connection or relationship,'" as long as in the "`popular'" understanding of such matters they could be viewed as being "`connected with and related to a single subject.'" Ibid. Here, the title "Misconduct by Corporate Official" provides sufficient information and notice of the statute's content, which, through its three subsections, properly addresses the single end of prohibiting the misuse of a corporation by way of fraud and the promotion of other criminal objectives. With that connection, N.J.S.A. 2C:21-9 satisfies the constitutional requirement.

IV
Defendant's claim of excessive sentence is without merit. In accordance with the terms of the plea agreement, the court treated the second-degree crime of misconduct by a corporate official, to which defendant pled guilty, as a third-degree offense for purposes of sentencing and imposed a term of imprisonment one year longer than the presumptive four-year term. This was based on the clear preponderance of aggravating over mitigating factors found by the judge. In this respect, both the complexity and duration of the Medicaid fraud scheme far exceeded the elements required to prove the offense and thus the court's consideration of the pervasive and extensive nature of the criminal fraud, N.J.S.A. 2C:44-1(a)(1), did not constitute double counting of aggravating factors. Furthermore, a sentencing court's consideration of mitigating factors is discretionary, N.J.S.A. 2C:44-1(b); State v. Soto, 340 N.J.Super. 47, 72, 773 A.2d 739, 754 (App.Div.), certif. denied, 170 N.J. 209, 785 A.2d 438 (2001), and its focus on the offense rather than the offender and his or her dependents is not misplaced. See State v. Johnson, 118 N.J. 10, 19-20, 570 A.2d 395, 399-400 (1990). We conclude there is no warrant for our interference with the sentence in this instance, with the following qualification.
While the plea agreement unmistakably provides for a five-year debarment from the Medicaid program, the judgment of conviction contains no such limitation. Although not technically discordant because reinstatement is not automatic, N.J.A.C. 10:49-12.2, we nevertheless remand the matter for the limited purpose of modifying the judgment of conviction consistent with the express terms of the plea agreement.
The matter is remanded for modification of the judgment of conviction to reflect a *78 five-year period of debarment. In all other respects, the judgment of conviction is affirmed.
NOTES
[1] This is further evidenced by use of the colon after the beginning clause to introduce the list of offenses, signaling that which follows is closely related to the opening phrase. N. Singer, Sutherland on Statutes and Statutory Construction, § 45:15; 47:01 (6th Ed. 2000).