NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-6047-12T3

IN THE MATTER OF GOVERNOR CHRIS
CHRISTIE'S APPOINTMENT OF
MARTIN PEREZ AS PUBLIC MEMBER 7
OF THE RUTGERS UNIVERSITY
BOARD OF GOVERNORS.

| APPROVED FOR PUBLICATION |
| :---: |
| **July 29, 2014** |
| **APPELLATE DIVISION** |

_____

Argued May 12, 2014 — Decided July 29, 2014

Before Judges Yannotti, Ashrafi and Leone.

On appeal from an appointment of Governor
Chris Christie to the Rutgers University
Board of Governors.

Leon J. Sokol argued the cause for appellant
Stephen M. Sweeney, in his capacity as
Senate President (Sokol, Behot & Fiorenzo,
attorneys; Mr. Sokol, of counsel; Mr. Sokol
and Steven Siegel, on the brief).

David S. Frankel, Deputy Attorney General,
argued the cause for respondent Governor
Chris Christie (John J. Hoffman, Acting
Attorney General, attorney; Melissa H.
Raksa, Assistant Attorney General, of
counsel; Mr. Frankel, on the briefs).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Stephen M. Sweeney, in his capacity as Senate President,

appeals from Governor Chris Christie's appointment of Martin

Perez as a public member of the Rutgers University Board of Governors. For the reasons that follow, we hold that the Governor's appointment was a proper exercise of his authority under N.J.S.A. 18A:65-14.

I.

The New Jersey Medical and Health Sciences Education Restructuring Act (the "Act"), was enacted on June 28, 2012, and signed by the Governor on August 22, 2012. L. 2012, c. 45, codified as N.J.S.A. 18A:64M-1 to -43, and in other sections of Title 18A. The Act restructured the higher education system in New Jersey in order to improve the quality and increase the efficiency of public educational services. N.J.S.A. 18A:64M-2(k); N.J.S.A. 18A:64M-29. To accomplish those purposes, the Act required that its provisions be liberally construed. N.J.S.A. 18A:64M-29. Among the many reforms implemented by the Act were governance changes to Rutgers University. N.J.S.A. 18A:64M-2(q).

At issue here is L. 2012, c. 45, § 87, codified at N.J.S.A. 18A:65-14, which altered the composition of Rutgers' Board of Governors. The statute provides:

> The membership of the board of governors shall be classified as follows and consist of:
>
> a. the president of the corporation, serving as an ex officio non-voting member; and

b.   15 voting members,

i.   seven of whom shall be appointed by the Governor of the State, with the advice and consent of the Senate, with one of these members being a resident of Camden County, and one of whom shall be appointed by the Governor upon the recommendation of the President of the Senate and the Speaker of the General Assembly and who shall be a resident of Essex County, and

ii.   seven of whom shall be appointed by the board of trustees, from among their members, one of whom shall be a resident of Essex County and one of whom shall be a resident of Middlesex County, elected and serving under the provisions of subsection I.c. or I.d. of 18A:65-15.

The first additional appointments made by the Governor pursuant to P.L.2012, c.45 (C.18A:64M-1 et al.), shall not require the advice and consent of the Senate, but thereafter such advice and consent shall be required.

All members shall serve for terms of six years[.]

[N.J.S.A. 18A:65-14.]

Section 87 amended subsection (b) of the statute, which previously read:

11 voting members,

i.   six of whom shall be appointed by the Governor of the State, with the advice and consent of the Senate, and

ii.   five of whom shall be appointed by the board of trustees, from among their members elected and serving under the

provisions of subsection I.c. or I.d. of 18A:65-15.

All members shall serve for terms of six years[.]

[N.J.S.A. 18A:65-14 (L. 1967, c. 271, § 18A:65-14, eff. Jan. 11, 1968; amended by L. 1994, c. 48, § 177, eff. July 1, 1994).]

Although the amendment suggests that the Governor appoints seven members of the fifteen-member Board, the parties agree that a close reading of subsection (b)(1) establishes that the amendment actually increased the number of gubernatorial appointments from six to eight, the seven specified appointees plus one from Essex County upon the recommendation of the legislative leaders.

The penultimate paragraph of the amended N.J.S.A. 18A:65-14 permits the Governor to make his "first additional appointments" directly, without the advice and consent of the Senate. Section 153 of the Act provides that this provision and others shall take effect on July 1, 2013, but allows administrative action to be taken in advance of that date as may be necessary for implementation of the legislation.

The Governor made his first direct appointment to the expanded Board on December 19, 2012, when he appointed Perez, a resident of Middlesex County, as Public Member 7. On May 13, 2013, the Governor nominated Camden County resident William M.

Tambussi to an existing vacancy on the Board "with the advice and consent of the Senate." The Governor made his second direct appointment to the Board on July 15, 2013, when he appointed Richard W. Roper, a resident of Essex County, who had been recommended by the Senate President and the Speaker of the Assembly. Perez was sworn in as a member of the Board on July 15, 2013.

On July 30, 2013, Senator Sweeney filed an application before this court for leave to submit an emergent motion on short notice challenging Perez's appointment. The application was denied that same day. The Senator filed a notice of appeal on August 13, 2013, along with a motion to stay the appointment. In response, the Governor filed a cross-motion to dismiss the appeal, arguing that the Senator lacked standing, this court does not have jurisdiction in the matter, and the appeal was not timely filed.[1]

We denied the Senator's motion for a stay, and reserved our decision on the Governor's motion to dismiss. As we explain herein, the Governor's motion will be denied.

---

[1] We note that the Senator's notice of appeal indicated that he was pursuing the matter in his individual capacity. The Senator filed an amended notice of appeal on September 12, 2013, stating that he was pursuing the matter in his official capacity as Senate President.

We turn first to the Governor's contention that, because the Senator is challenging Perez's right to hold office as a member of the Board, his claim may only be asserted in an action in lieu of prerogative writs brought in the Law Division pursuant to N.J.S.A. 2A:66-6. We do not agree.

In New Jersey, prerogative writ actions have historically been used by citizens to challenge actions of administrative agencies. Alexander's Dep't Stores of N.J., Inc. v. Borough of Paramus, 125 N.J. 100, 107 (1991).[2] In order to streamline and strengthen the prerogative writs practice, article VI, section V, paragraph 4 of the 1947 New Jersey Constitution consolidated the established prerogative writs into a single action which "guaranteed a petitioner the same rights to appeal as were provided by those writs." Alexander's, supra, 125 N.J. at 107.

Challenges to an individual's claim to public office had historically been brought as an information in the nature of quo warranto. See In re Fichner, 144 N.J. 459, 470 (1996) (noting that unqualified officers may be removed under the writ of quo

_____

[2] "Prerogative writs" is the name, derived from English law, given to certain writs issued by the courts, Black's Law Dictionary 1182 (6th Ed. 1990). New Jersey traditionally recognized the prerogative writs of certiorari, quo warranto, prohibition, and mandamus. In Re LiVolsi, 85 N.J. 576, 593 (1981).

warranto); <u>Swede v. City of Cifton</u>, 22 <u>N.J.</u> 303, 315-16 (1956) (observing that under the former Constitution, "the right and title to a public office was triable only by an information in the nature of <u>quo</u> <u>warranto</u>").

In modern practice, the right to institute a proceeding in lieu of the prerogative writ of <u>quo</u> <u>warranto</u> against any person for unlawfully holding any office is embodied in <u>N.J.S.A.</u> 2A:66-6. <u>Pickett v. Harris</u>, 219 <u>N.J. Super.</u> 253, 258 (App. Div. 1987), <u>appeal dismissed</u>, 114 <u>N.J.</u> 471 (1989). A proceeding may be brought under this statute if an office holder was not lawfully elected, did not meet residency requirements, or did not possess other qualifications of the office. <u>Id.</u> at 259.

On the other hand, the writ of <u>certiorari</u> was used to "review the actions of inferior tribunals such as administrative agencies." <u>In re LiVolsi</u>, <u>supra</u>, 85 <u>N.J.</u> at 594 n.18 (1981); <u>Vas v. Roberts</u>, 418 <u>N.J. Super.</u> 509, 521 n.3 (App. Div. 2011). Thus, a writ of <u>certiorari</u> involving state agency action corresponds to the appeal presently allowed under <u>Rule</u> 2:2-3(a)(2). <u>See</u> <u>D.J. Miller & Assocs. v. State, Dep't of the Treasury</u>, 356 <u>N.J. Super.</u> 187, 192 (App. Div. 2002) (noting that appellate review of administrative agency action under <u>Rule</u> 2:2-3(a)(2) is essentially the substitute for the common law writ of <u>certiorari</u>).

Under the prior practice, when the administrative act challenged was the appointment of a public official, the writs of quo warranto and certiorari could both be implicated. This is explained in Vanderbach v. Hudson County Board of Taxation, 133 N.J.L. 499, 500 (Sup. Ct. 1946), aff'd, 135 N.J.L. 349 (E. & A. 1947). There, the court affirmed a resolution of the Board of Taxation that had suspended the board secretary for misconduct. Id. at 512. The Governor removed the existing board members and appointed an entirely new board. Id. at 500. The court observed:

> The act of the governor in removing the old and appointing the new board was not under challenge at the time of the events herein recounted nor, with the exception hereinafter noted, has it since been. Had the old members of the board chosen, while still in possession, to dispute the legality of the appointment of the new members certiorari was available to them, Murphy v. Freeholders of Hudson County, 92 N.J.L. 244 [E. & A. 1918]; and later, quo warranto, Murphy v. Ellenstein, 119 N.J.L. 159 [Sup. Ct. 1937].

> [Ibid.]

Vanderbach thus indicates that the Governor's appointment of Perez on December 19, 2012, was the sort of action that could have been challengeable under the previously recognized writ of certiorari. Vanderbach suggests that, after the challenged official takes office, the procedural route to challenge the official's possession of the office is by way of a quo warranto

action. However, we are not convinced that the right to challenge the appointment no longer existed once Perez took office, particularly in view of the nature of the challenge brought in this case.

As we understand it, the Senator's appeal is primarily addressed to the Governor's action in appointing Perez without the advice and consent of the Senate. In our view, that challenge rests squarely within this court's jurisdiction under Rule 2:2-3(a)(2). Therefore, we need not consider whether this challenge also could have been brought under N.J.S.A. 2A:66-6.

We note that, although Rule 2:2-3(a)(2) does not expressly mention the Governor, we have held that the rule encompasses appeals from actions by the Governor because such actions are those of a "state administrative agency or officer." Bullet Hole, Inc. v. Dunbar, 335 N.J. Super. 562, 571-72 (App. Div. 2000). See also Vas, supra, 418 N.J. Super. at 519.

We therefore conclude that the Senator may maintain a direct appeal under Rule 2:2-3(a)(2) to this court from the Governor's action in appointing Perez to the Board.

### III.

Next, the Governor argues that, if we determine that the Senator may challenge the appointment in an appeal to this court under Rule 2:2-3(a)(2), the appeal must be dismissed as having

9                                          A-6047-12T3

been filed beyond the time prescribed by Rule 2:4-1(b).

Rule 2:4-1(b) requires that an appeal from a final action of a state administrative agency or officer be taken within forty-five days from the date of notice of the action. Rule 2:4-4(a) also permits the court to extend the time for appeal up to thirty days for good cause shown. The time limitations established by these rules are generally mandatory and jurisdictional. Joseph L. Muscarelle, Inc. v. State, Dep't of Transp., 175 N.J. Super. 384, 394 (App. Div. 1980), appeal dismissed, 87 N.J. 321 (1981). Thus, if an appeal is filed beyond the time limits established by the rules, the court normally lacks jurisdiction over the matter and it must be dismissed. Ibid.

The Governor contends that, because the Senator is challenging the appointment made on December 19, 2012, his appeal should have been filed by February 4, 2013, pursuant to Rule 2:4-1(b), or at least by early March 2013, if the time to appeal is extended for thirty days, as permitted by Rule 2:4-4(a).

In response, the Senator argues that the appeal is timely because Perez's appointment was not operative until July 1, 2013, the date when N.J.S.A. 18A:65-14 took effect. The Senator also argues that even if the time for appeal began to run on

December 19, 2012, when the appointment was made, the appeal should be heard in the public interest.

We are convinced that the Governor's appointment of Perez was final on December 19, 2012, even though the statute under which the appointment was made did not take effect until July 1, 2013. It is well established that "'an appointment to a new office to take effect on the establishment of such office may be made before the law establishing such office goes into effect.'" Pashman v. Friedbauer, 4 N.J. Super. 123, 127 (App. Div. 1949) (quoting 46 C.J. § 64 (1928)).

Here, Senator Sweeney did not file a notice of appeal from the appointment within the time prescribed by the court rules. However, the Senator may have reasonably believed that the time for appeal did not run because the Act had not taken effect, and Perez had not been sworn into office. Under these circumstances, it is appropriate to treat the notice of appeal as having been filed as within time.

In addition, even if Senator Sweeney's appeal was untimely, this is the rare case in which the public interest requires that we exercise jurisdiction and decide the issue presented. The courts have from time to time considered appeals, although not timely filed, in which issues of genuine public importance have been raised. See Jacobs v. N.J. State Highway Auth., 54 N.J.

393, 396 (1969) (considering untimely challenge to Authority's retirement policy for workers because of "the importance of the public question involved"); In re Rodriquez, 423 N.J. Super. 440, 447 (App. Div. 2011) (declining to dismiss appeal as untimely because it raised allegations of use of excessive force by corrections officers); Rumana v. Cnty. of Passaic, 397 N.J. Super. 157, 171 (App. Div. 2007) (noting our reluctance to impose the time bar of Rule 2:4-1(b) "where the issues raised involve significant questions of public interest").

The question of whether the Act empowers the Governor to appoint Perez to the Board without the advice and consent of the Senate is a matter of importance and interest to the Senate, the University, the Board and the public generally. In addition, the delay here was not excessive, and the Senator brought the appeal within forty-five days of the effective date of the Act and Perez's entry into office. We therefore conclude that the appeal should not be dismissed as untimely.

## IV.

The Governor further argues that Senator Sweeney does not have standing to challenge Perez's appointment. He contends that the Senator lacks a sufficient interest in the Board to support an action challenging the appointment. He also argues that, as an individual legislator, the Senator lacks standing to bring an

action to protect the Senate's interest as a legislative body. Again, we disagree.

"New Jersey has a broad definition of standing when it comes to challenging governmental actions." Loigman v. Twp. Comm. of Middletown, 297 N.J. Super. 287, 294 (App. Div. 1997). New Jersey's liberal approach to standing is based in part on the fact that our Constitution, unlike its federal counterpart, contains no express language confining the exercise of judicial power to actual cases and controversies. Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107 (1971).

Nevertheless, New Jersey courts are reluctant to render advisory opinions or function in the abstract, and have "confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness." Ibid. As we have explained, "[t]here must be a substantial likelihood the plaintiff will experience some harm if the court returns an unfavorable decision." Loigman, supra, 297 N.J. Super. at 295.

We are convinced that the Senate has a strong interest in exercising its authority to advise and consent to gubernatorial appointments, if such advice and consent is required by law. We are also convinced that, as Senate President, Sweeney has standing to bring this appeal to advance that interest.

A-6047-12T3

Recognition of the Senate President's standing in this dispute is consistent with past practice. Indeed, the courts have permitted the Senate President, the Speaker of the General Assembly, or both, to participate in litigation challenging actions by the Governor or the Legislature. Abbott v. Burke, 164 N.J. 84, 87 (2000) (allowing Speaker to intervene in appeal "out of deference to the constitutional branches of government"); Karcher v. Kean, 97 N.J. 483, 487 (1984) (considering appeal brought by the Senate President and Speaker challenging the Governor's use of the line-item veto); In re Forsythe, 91 N.J. 141, 144 (1982) (allowing Speaker, the General Assembly, the Senate President and the Senate to intervene to defend redistricting statute); Gilbert v. Gladden, 87 N.J. 275, 278-79 (1981) (considering appeal brought by individual legislators challenging practice of gubernatorial courtesy).

The Governor argues that Senator Sweeney should not be permitted to represent the Senate's interest in this case because the Senate did not adopt a resolution authorizing him to do so. We note that in General Assembly of New Jersey v. Byrne, 90 N.J. 376, 381 (1982), the Legislature had passed a concurrent resolution authorizing the Senate President and Assembly Speaker to begin a legal action to enforce certain legislation. However, such a resolution is not required to confer standing on the

Senate President to further the Senate's institutional interests through litigation.

We conclude that the Senator has standing to challenge the Governor's appointment of Perez to the Board in his capacity as Senate President.

V.

We turn to the merits of the appeal. The Senator argues that the Governor's appointment of Perez as Public Member 7 of the Board is contrary to the plain language of N.J.S.A. 18A:65-14 and is therefore ultra vires and unlawful. He contends that under the statute, the Governor could only appoint Public Member 7 without the advice and consent of the Senate if the person so appointed is a resident of Camden County, which Perez is not.

The Senator maintains that, while the Governor nominated Tambussi, a Camden County resident, to an existing vacancy on the Board, this does not satisfy the requirement that the Governor's appointees to the Board include a Camden County resident. The Senator says the Camden County resident must be one of the two persons appointed to the Board without advice and consent of the Senate.

In response, the Governor contends that his appointment of Perez is a proper exercise of the authority conferred upon him in N.J.S.A. 18A:65-14. He maintains that the statute merely

requires that two of his eight appointees to the Board include one Camden County resident. He argues that, as long that residency requirement is satisfied by one of his appointees of the Board, he could select an individual for appointment for one of the additional seats on the Board, without the Senate's advice and consent, even though that person does not reside in Camden County.

When interpreting a statute, our objective is "to discern and implement the Legislature's intent." State v. Drury, 190 N.J. 197, 209 (2007); McCann v. Clerk of Jersey City, 167 N.J. 311, 320 (2001). To do so, we begin our analysis "with the words of the statute because if the language is plain and its meaning clear, the inquiry ends there." State v. Malik, 365 N.J. Super. 267, 274 (App. Div. 2003), certif. denied, 180 N.J. 354 (2004); see also State, Dep't of Law & Pub. Safety v. Bigham, 119 N.J. 646, 650-51 (1990) (noting that "when a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent").

Furthermore, "the words and phrases in the statute must be given their generally accepted and ordinary meaning, and must be examined not only in their own contextual setting, but in relation to surrounding provisions in the statutory scheme." Malik, supra, 365 N.J. Super. at 275-76 (citations omitted);

accord Body-Rite Repair Co. v. Dir., Div. of Taxation, 89 N.J. 540, 543 (1982). We may not "'rewrite a plainly-written enactment' or engraft 'an additional qualification which the Legislature pointedly omitted.'" Donelson v. DuPont Chambers Works, 206 N.J. 243, 261 (2011) (quoting Mazzacano v. Estate of Kinnerman, 197 N.J. 307, 323 (2009)).

As we stated previously, N.J.S.A. 18A:65-14, as amended, expanded the Board from eleven to fifteen members, and increased the number of gubernatorial appointees from six to eight. The statute provides that the Governor shall appoint those members with the advice and consent of the Senate. One of those eight members must be a resident of Camden County, and one must be a resident of Essex County, appointed upon the recommendation of the Senate President and the Speaker of the General Assembly. The statute further provides, however, that the Governor's "first additional appointments" may be made without the advice and consent of the Senate.

Thus, the residency requirements in N.J.S.A. 18A:65-14 apply generally to the eight Board members appointed by the Governor. The term "first additional appointments" refers to the two additional appointments permitted by the Act. The paragraph granting the Governor the authority to make those two appointments without the advice and consent of the Senate makes

17

no reference to the aforementioned residency requirements. As the Governor points out, the Legislature could have written the statute to impose residency requirements for the "first additional appointments" if that was its intention. However, the Legislature imposed no such limitation.

In support of his argument, the Senator asserts that, by referring to the Act in the paragraph pertaining to the "first additional appointments," the Legislature expressed its intent that the "first additional appointments" be for the two newly-created, residency-linked seats. We are not convinced by this argument. As we read the statute, the Legislature intended that the Governor's eight appointees would include two members that meet the prescribed residency requirements. The Legislature did not expressly provide that "first additional appointments" meet those residency requirements.

We are therefore convinced that the plain language of N.J.S.A. 18A:65-14 supports the Governor's interpretation of the statute. Since the Governor nominated a Camden County resident to fill an existing vacancy on the Board, his appointment of Perez to one of the additional two seats without the advice and consent of the Senate was an appropriate exercise of the authority conferred on him by the statute.

18                                          A-6047-12T3

Because the Legislature's intent can be discerned from the plain language of the statute, we need not consider the legislative history of N.J.S.A. 18A:65-14. We note, however, that, if statutory language is ambiguous, we may turn to extrinsic evidence as an aid to construction, including the legislative history. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005) (citing Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)); Burns v. Belafsky, 166 N.J. 466, 473 (2001). Indeed, "[w]here available, the official legislative history and legislative statements serve as valuable interpretive aids in determining the Legislature's intent." Drury, supra, 190 N.J. at 209 (internal quotation marks and citation omitted).

In support of his interpretation of the statute, the Senator cites a legislative staff memorandum prepared by an assistant counsel to the Senate Democratic Majority, and distributed to all Democratic Senators on June 28, 2012, the day that the legislation was passed. The eleven-page memorandum summarized the changes that would be implemented under the Act. Section 4(a) of the memorandum stated:

> The Rutgers University Board of Governors would be expanded from 11 members to 15. The four new members of the Rutgers Board of Governors would be:
>
> i.   One member appointed by the Governor (who must reside in Camden County), the initial appointment would be without

the advice and consent of the Senate but subsequent appointments would require advice and consent.

ii. One member recommended to the Governor by the Speaker and the Senate President and appointed by the Governor, who must reside in Essex County.

iii. Two members from the Board of Trustees: one must reside in Essex County and one must reside in Middlesex County.

The memo does not support the Senator's interpretation of the statute. It sets forth the assistant counsel's interpretation of the proposed law, but she is not a legislator. Furthermore, even if the assistant counsel was a member of the Legislature, "statements of individual legislators are not generally considered to be a reliable guide to legislative intent." State v. Yothers, 282 N.J. Super. 86, 104 (App. Div. 1995) (Skillman, J., dissenting) (citing W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98-99, 111 S. Ct. 1138, 1147, 113 L. Ed. 2d 68, 83 (1991)).

In addition, the memorandum apparently was only provided to Senators of one political party, and not to members of the General Assembly. Moreover, there is no indication that the Senators who received the memo read its summary of the changes to N.J.S.A. 18A:65-14, or that they concurred in the analysis.

The progression of the bill through the Senate provides more insight into the Legislature's intent. Senate No. 2063 (the

"Bill"), as introduced on June 7, 2012, amended N.J.S.A. 18A:65-14(b)(i) to increase the members to be appointed by the Governor from six to nine, "with the advice and consent of the Senate, two of whom shall be from a northern county in the State." S. 2063 (as introduced by Senate, June 7, 2012). There was no provision for the direct appointment of members by the Governor.

The Senate Budget and Appropriations Committee reprinted the Bill on June 18, 2012, to again provide for the Governor's appointment of nine members with the advice and consent of the Senate, but deleted the requirement that two members be from a northern county, and added the requirement that one member "shall be appointed jointly by the President of the Senate and the Speaker of the General Assembly and who shall be a resident of Essex County." S. 2063 (as reported by the S. Budget and Appropriations Comm., June 18, 2012). The June 18, 2012, reprint of the Bill also added the provision that the "first additional appointments" made by the Governor would not require the advice and consent of the Senate. Ibid.

The Senate reprinted the Bill on June 21, 2012, reducing the number of gubernatorial appointments to eight: "seven of whom shall be appointed by the Governor of the State with the advice and consent of the Senate, and one of whom shall be appointed jointly by the President of the Senate and the Speaker

A-6047-12T3

of the General Assembly and who shall be a resident of Essex County." S. 2063 (as amended by the Senate, June 21, 2012). The Bill retained the provision allowing the Governor to make the "first additional appointments" without the advice and consent of the Senate. Ibid.

The final reprint of the Bill was introduced on June 28, 2012. It altered the wording of subsection (i) to provide for the appointment of seven members with the advice and consent of the Senate, and one member, who is a resident of Essex County, to be appointed by the Governor upon the recommendation of the President of the Senate and the Speaker of the General Assembly. S. 2063 (as amended by the Senate, June 28, 2012).

For the first time, subsection (i) required that "one of these members" be a resident of Camden County. Ibid. The final reprint retained the provision allowing the Governor to make the first additional appointments without the advice and consent of the Senate, unchanged from the June 18, 2012, and June 21, 2012, versions. Ibid.

The legislative history of the Bill thus shows that there was never a link between the Camden County residency requirement and the Governor's authority to make the first additional appointments without the advice and consent of the Senate. Rather, the grant of authority to directly appoint members

pertained simply to the additional appointments allotted to the Governor above the original six, and remained unchanged as the number of additional members, geographical requirements and other language was altered.

In his reply brief, the Senator argues that Tambussi's nomination to the Board does not satisfy the requirement that at least one Board member reside in Camden County, because Tambussi's nomination was never acted upon by the Senate, and in fact, expired. We note that Tambussi was again nominated in the current legislative session and his nomination was referred to the Senate Judiciary Committee.

In any event, as we have explained, the statute requires that one of the Governor's appointees be a resident of Camden County, and another a resident of Essex County, appointed upon the recommendation of the Senate President and the Assembly Speaker. N.J.S.A. 18A:65-14(b)(i). The Governor nominated a resident of Camden County to one of the vacant seats on the Board.

If the Senate does not give its advice and consent to Tambussi's nomination, one of the Governor's other nominees to the Board would have to be a Camden County resident. This does not, however, preclude the Governor from directly appointing Perez as a member of the Board, without the Senate's advice and consent.

We therefore conclude that the Governor's appointment of Perez to the Board, without the advice and consent of the Senate, was a lawful exercise of the authority conferred upon him by N.J.S.A. 18A:65-14.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION