**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2455-21

S.S. and A.S.,

    Plaintiffs-Respondents,

v.

C.S.,

    Defendant-Appellants.

_____

Argued September 26, 2024 – Decided October 9, 2024

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1096-18 and Essex County, Docket No. FM-07-0111-23.

Bruce D. Greenberg argued the cause for appellant (Lite DePalma Greenberg & Afanador, LLC, attorneys; Bruce D. Greenberg and Connor T. Wright, on the brief).

Respondents have not filed a brief.

PER CURIAM

Defendant C.S.[1] appeals from August 12, 2021, and March 15, 2022, orders adjudicating a post-judgment dispute, regarding children he and plaintiff S.S. had during their marriage. We reverse and remand for the reasons set forth in this opinion.

I.

The parties were divorced in March 2019. Approximately one year later, defendant filed an emergent application for sole custody of the children. He alleged A.S., then S.S.'s fiancé, had sexually and physically abused the children. The trial court initially imposed restraints barring A.S. from contact with the children, but then dissolved them following an investigation by the Division of Child Protection and Permanency (Division), which resulted in a "not established" finding for abuse or neglect.

Defendant filed an emergent appeal arguing the trial court should have held a hearing on his claims of abuse. After we denied defendant's emergent appeal, the Supreme Court granted his appeal and "summarily remanded to the trial court for a plenary hearing which shall be conducted on an expedited basis." The Court maintained a stay we had imposed until the trial court decided the case.

---

[1] We utilize initials pursuant to Rule 1:38-3(a).

A-2455-21

Prior to the plenary hearing, defendant filed an additional certification making new allegations, namely, physical abuse of the children by plaintiff. He also claimed she interfered with his parenting time. However, the trial court declined to consider the new allegations and limited the hearing to the abuse allegations against A.S. set forth in defendant's original emergent application. The court held that any custody issues would be handled separately following the plenary hearing. It also announced it would hold an N.J.R.E. 104 hearing to determine the admissibility of the children's out-of-court statements regarding abuse. The Rule 104 hearing never occurred. Instead, the court ruled it would decide the admissibility of the statements as it listened to the testimony.

The trial court directed defendant to establish a litigation fund to pay S.S.'s costs. It also appointed an attorney to represent the children and a guardian ad litem. The court conducted a nineteen-day hearing during which it heard from eleven witnesses, including the parties' older child.

On August 12, 2021, the court issued a written opinion in which it found defendant had not met the burden of proof to show the children had suffered sexual or physical abuse. The court found defendant proved A.S. had disparaged him to the children and interfered with his parenting time.

A-2455-21

Due to the animosity between defendant and plaintiff, and defendant and A.S., the court concluded it was "crystal clear that significant remedial measures must be implemented to protect the children . . . ." The court found that, at that juncture, it was not in the best interests of the children to "ease the restraints so that [A.S.] be permitted to enjoy time with them as their step-father."[2] It also restrained A.S. from custody exchanges. Although the court found no evidence defendant alienated the children from A.S., it was clear neither child wanted a relationship with A.S. As a result, the court ordered the children to attend intensive therapy to address their concerns regarding A.S. Plaintiff and defendant were also ordered to attend therapy to learn how to co-parent. A.S. was also ordered into therapy to understand and accept there were boundaries with the children, how to avoid conflict to nurture his relationship with them, and how to respect defendant.

The court appointed a therapist to "recommend [a] reunification procedure" for the children and A.S. It ordered the parties to bear the costs of the therapist as follows: twenty-five percent plaintiff; and seventy-five percent defendant. The court ordered the parties to pay a parenting coordinator they had

---

[2] By the time the court rendered its decision, A.S. and plaintiff were married and had a child of their own.

agreed upon in the divorce and to split those costs in a similar fashion as the therapist. The court divided the costs of the guardian ad litem and the children's attorney along the twenty-five/seventy-five percent basis.

On September 24, 2021, the trial court issued an order certifying its August decision as final. The order also noted defendant withdrew his request for a best interests hearing without prejudice. In October 2021, the court denied defendant's request for a stay pending appeal. In April 2022, defendant filed a notice of appeal and subsequently the trial court issued an amplification, opining that because it declared its August 2021 decision final in September 2021, defendant was out of time to challenge it.

While the appeal was pending, defendant moved for recusal of the trial court and to vacate its orders due to a conflict of interest created by the court's law clerk taking a job with the law firm that represented plaintiff at trial. On July 5, 2022, the trial court granted the motion to recuse, but declined to vacate its orders. Defendant subsequently moved before us to vacate the trial court's orders or alternatively remand the matter to be heard by the court newly assigned to the matter. We granted the remand. On September 12, 2022, the original trial court issued an amplification explaining why there was no conflict created by

5

its clerk requiring it to vacate its orders. On remand, the newly assigned trial court denied defendant's motion to vacate the trial court's orders.

Defendant moved before us for a stay of the August 2021 decision because the reunification therapy would result in a lifting of the restraints against A.S. We denied the request for a stay, but noted the restraints would remain in place pending a decision by us or a further ruling by the trial court based on the progress of the reunification therapy.

On this appeal, defendant argues the trial court violated the Supreme Court's order to conduct a plenary hearing by limiting the abuse allegations it would consider. He asserts the court should have considered the up-to-date "living record" and allowed him to adduce evidence of abuse he alleged occurred after the remand. Further, that the court compounded this error when it ruled some of the conduct defendant alleged was not sexual misconduct, under N.J.R.E. 803(c)(27).

Defendant contends the trial court's recusal, and the conflict of interest created by its law clerk required it to vacate its August 2021 order. He also claims the court relied upon outdated and incomplete information from plaintiff when it considered the issues of expert costs and attorney's fees.

## II. Scope of the Hearing

Defendant argues the court erred by limiting the hearing to the allegations against A.S. outlined in twelve paragraphs of his initial certification in support of his order to show cause. He claims the court ignored the fact the Supreme Court ordered a plenary hearing and failed to appreciate the scope of the danger posed by both A.S. and plaintiff, based on events beyond those twelve paragraphs. By not considering the allegations of abuse that occurred since the first order to show cause, the court contravened precedent requiring it consider a "living record[,]" including up-to-the-moment events.

We review decisions made by a trial court to manage the conduct of its cases, both substantive and procedural "accord[ing] substantial deference to such rulings" of the trial court. Cosme v. Borough of E. Newark Twp. Comm., 304 N.J. Super. 191, 202 (App. Div. 1997) (citing Smith v. Smith, 17 N.J. Super. 128, 134 (App. Div. 1951)). We will reverse a court's exercise of discretionary authority only when it is "'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

A-2455-21

We review a trial court's legal decisions de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020) (citing McGovern v. Rutgers, 211 N.J. 94, 108 (2012)). Even a discretionary decision made under a misconception of law is not entitled to deference. Summit Plaza Assocs. v. Kolta, 462 N.J. Super. 401, 409-10 (App. Div. 2020).

Prior to trial, the court advised "the scope of the preliminary hearing remanded to the trial court shall be limited to the . . . alleged sexual or quasi-sexual activity which occurred . . . in or about March of 2020 . . . ." It then severed the custody dispute from the abuse issues and entered a written order stating:

> The scope of the [p]lenary [h]earing remanded to the trial court shall be and is hereby limited to the allegations set forth in [p]aragraphs [four] through [sixteen] of the [c]ertification of [defendant] dated March 16, 2020. The evidence of the [p]lenary [h]earing is limited to the aforesaid allegations only. The [c]ourt will address the present situation regarding custody and parenting time of the children separate and apart and upon conclusion of the [p]lenary [h]earing whether or not to continue the restraints entered against [A.S.].

Defendant's March 16, 2020 certification alleged that on March 13, 2020, the younger child disclosed A.S.: "picked [the younger child's] butt[;]" taught the children something he called "ball[ ]clapping," whereby the children thrust

their pelvis to have their testicles make a clapping sound; put his fingers and toes in the younger child's mouth; made several disparaging comments about defendant in the children's presence; and terrorized and bullied the children. Notably absent were allegations against plaintiff.

The trial court found the only evidence of the alleged anal penetration was the younger child's statement relayed to defendant, his older sibling, and two other witnesses who testified. The younger child did not testify.

"The court accepted the 'ball[ ]clapping' observations by [the older child] as corroboration to permit his N.J.R.E. 803(c)(27) testimony into evidence." However, "[w]hile the 'ball[ ]clapping' observations [were] troubling, by the description given, they were not sexual offenses, but rather weird, inappropriate dancing." The court noted the children were naked during the incidents "because they were about to take a bath, while [A.S.] was dressed with pants on and no shirt; his genitalia was not exposed, and there was no physical contact between [him] and the children." A.S. "did not commit a lewd act or perform any sexually inappropriate conduct in the presence of the children." Moreover, it was "absolutely inconceivable that a [young] child . . . could perform such an auditory act, beyond 'weird dancing.'" Although the court found the behavior

9

odd, it concluded it did not support that A.S. digitally penetrated the younger child's anus.

The court found no competent evidence was presented to support defendant's allegation of A.S. putting his fingers in the younger child's mouth. Defendant alleged A.S. came into the bathroom while the children were in the bathtub and "[took] a poop." The court credited the older child's testimony about the incident, but also credited A.S.'s explanation that he entered the bathroom to watch the children because they were alone in the tub, and he did not defecate. As a result, the court concluded defendant did not meet the burden of proof.

Defendant asserted A.S. was convicted of harassment in New York for offenses involving the children. The trial court noted A.S. was not convicted and had received a conditional discharge. If anything, the court found this was evidence of the deep dislike between A.S. and defendant, which required remediation.

Defendant claimed A.S. monitored and intruded on the video calls with the children. The court found this was not a reason to restrain him from the children, but instead cause to require A.S. to attend therapy to understand his limitations.

A-2455-21

Defendant certified the older child told defendant the younger child said A.S. forced him to suck A.S.'s toes. The court found the weight of the evidence in equipoise as to whether A.S. "commanded" the child to suck his toes, whether the older child saw the younger child sucking his toes and the context of the event. The court concluded "although an incident occurred, it cannot be found to be abusive nor was it a sexual act or sexual simulation as defendant alleged."

Defendant further alleged A.S.: 1) snuck up on the children while they were bathing and poured cold water on them; 2) shaved the children's head for no reason; 3) tricked the younger child into eating spicy cheese and yelled "let it burn!"; 4) restrained the younger child, sat on the child's head, and then passed gas; 5) showed the younger child a photo of plaintiff, in which her breast was exposed; 6) told both children what a vagina was without a scientific or educational basis; 7) yelled at the younger child for wanting to call defendant; 8) told the children defendant was a loser, a coward, and that A.S. was going to "break [defendant's] head off;" 9) forcefully threw food at the younger child's head, face, and eyes; and 10) confined the children in their rooms for several hours while plaintiff was out and yelled at them to return to their rooms when they emerged asking for food.

11

The trial court found A.S. pouring cold water on the children "was a harmless prank" and not child abuse. A.S. was authorized to give the children haircuts. There was no malicious intent to make the children eat spicy food and no credible evidence of A.S. restraining the younger child and passing gas because the child did not testify.[3] The court found no evidence A.S. intended to depict plaintiff in a lewd manner by showing the children a picture of their mother in bathing suit. There was no competent evidence presented that A.S. told the children what a vagina is or that he yelled at the older child for wanting to call defendant. There was video evidence presented showing A.S. calling defendant a coward and a loser. The court found this constituted child abuse, but noted both men participated in the verbal jabs and the court would address and remedy their conduct. Defendant did not meet his burden of proof to show A.S. violently threw food at the younger child. The court found no competent evidence A.S. locked the children in their room and deprived them of food.

We are constrained to reverse and remand for another plenary hearing because the court improperly limited the scope of the hearing to the sexual abuse allegations outlined in defendant's moving certification. A plenary hearing contemplates a "[f]ull; complete; entire" hearing. Black's Law Dictionary 1397

---

[3] The younger child was too young to testify.

(12th 2024). The term "is commonly understood to mean 'a complete and full proceeding conducted before a judge, providing the parties with discovery, the opportunity to present evidence, to give sworn testimony, to cross-examine witnesses and to make arguments.'" Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 117 (App. Div. 1995) (quoting N.J.A.C. 1:1-2.1).

The Supreme Court's remand did not limit the scope of the hearing. Although we appreciate the trial court's efforts to streamline the issues it believed it needed to decide, defendant's initial order to show cause sought custody. Even though defendant later withdrew the custody application without prejudice, it was explained to us at oral argument that this was to expedite an appeal of the trial court's decision on the abuse allegations. However, a hearing to address abuse allegations involving children means "[a] plenary hearing must be conducted where 'the custody of children is a genuine and substantial issue. . . .'" Faucett v. Vasquez, 411 N.J. Super. 108, 128 (App. Div. 2009) (omission in original) (quoting R. 5:8-6).

In custody cases, the court must address several factors, including those involving abuse. See N.J.S.A. 9:2-4(c). Beyond the statutory factors, a court's evaluation of a child's best interests requires it "to consider any and all material evidence." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (citing In Re Baby

M., 109 N.J. 396, 456 (1988)). This allows each allegation and fact to be heard in context, enabling the court to gain insight that would not otherwise be possible. It is therefore an indispensable part of the longstanding mandate that every custody case be determined by the best interests of the child. Matsumoto v. Matsumoto, 171 N.J. 110, 132 (2002) (explaining that "part and parcel to" a best-interest determination is the consideration of "all relevant evidence"). Therefore, defendant's change-of-custody request required the court to hear all relevant evidence together and all the allegations in his order to show cause.

Assuming arguendo, that a discrete hearing on the child abuse allegations alone was appropriate, the trial court did not adhere to its original intention. Although the court announced its intent to keep the hearing focused on the restraints against A.S., its decision drew conclusions regarding "the children's interests" and set the "goal" of "reunification with [A.S.] and plaintiff in plaintiff's home." We interpret from this that the court did not intend to modify custody. However, even in this instance, this decision required the court to apply the facts to N.J.S.A. 9:2-4(c) to explain why the children's best interests required maintaining the status quo.

We are also persuaded that, given the passage of time from defendant's initial order to show cause and the start of trial, the court should have allowed

14

defendant to include the incidents that occurred after the initial order to show cause to be tried as part of the plenary hearing. Those allegations included that plaintiff had physically and verbally abused the children and interfered with the Division's investigation.

Defendant points us to Morgan v. Morgan, 205 N.J. 50 (2011), and Cooper v. Cooper, 99 N.J. 42 (1984). He argues the trial court violated a generally applicable rule that, on remand, a Family Part case should embrace a "living record" that accounts for changes in the parties' and their children's lives.

This principle stems from the recognition that "the circumstances of the parties [may] have changed" between the hearing of an initial motion and a remand for a new hearing. Cooper, 99 N.J. at 58. Given the important role of the Family Part in deciding the best interests of children where their parents cannot agree, we often state that "on remand both parties may supplement the record with any information that may be pertinent . . . ." Id. at 59; see also Morgan, 205 N.J. at 68-69; R.K. v. F.K., 437 N.J. Super. 58, 68 (App. Div. 2014). However, whether a court should consider the "living record" is not automatic, but a discretionary decision guided by the fact "it is the substantive changes in the parties' lives that take place during the passage of time that are the focus." Morgan, 205 N.J. at 69.

Here, a year had passed before the remand hearing began. According to defendant, during that time, plaintiff had: physically abused the children by shoving, kicking, and pinching them; threatened them to prevent them from reporting A.S. or herself; yelled at them and called them names; refused to exercise parenting time or video calls; and kept them from attending school. As a result, defendant claimed the children feared plaintiff and pleaded with him not to spend time at her home. We are satisfied these new facts and circumstances were relevant to the children's best interests and should have been tested at the plenary hearing.

We have no illusion the facts may have changed yet again, during the pendency of this appeal. If that is the case, the trial court is directed to consider them if, in its discretion, it deems them relevant to the children's bests interests as we have previously outlined.

### III. The Evidentiary Rulings

Defendant argues the court erred in holding the toe-sucking incident was not sexual in nature, and that his description of the children's disclosures was not admissible under N.J.R.E. 803(c)(27). He alleges the court's finding regarding the toe sucking was conclusory and unsupported by facts and law. Defendant points to several studies documenting the prevalence of foot fetishes,

A-2455-21

including toe sucking as a typical activity of pedophiles.  If the court let him testify, he would have proved the conduct was sexual because the children reported that A.S. smiled, laughed, and "liked what [the younger child] was doing" during the incident, indicating sexual pleasure.  He also would have testified to "many more" incidents than those explored at the hearing.

We typically defer to a trial court's evidentiary rulings reversing only where there is an abuse of discretion.  State v. Medina, 242 N.J. 397, 411-12 (2020).  Under this standard, the trial court's evidentiary holding will not be disturbed unless it is "'so wide of the mark' that it constitutes 'a clear error in judgment.'"  State v. Garcia, 245 N.J. 412, 430 (2021) (quoting Medina, 242 N.J. at 412).  However, if the trial court applies the wrong legal standard in its evidentiary ruling, our review is de novo.  State v. Trinidad, 241 N.J. 425, 448 (2020) (citing State v. Garrison, 228 N.J. 182, 194 (2017)).

N.J.R.E. 803(c)(27) describes the "tender years" exception to the hearsay rule as:

> A statement made by a child under the age of [twelve] relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil case if . . . the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and . . . either (i) the child testifies at the proceeding, or

> (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse . . . .

The trustworthiness of a statement pursuant to N.J.R.E. 803(c)(27) is determined by considering the "totality of the circumstances." State v. P.S., 202 N.J. 232, 249 (2010) (quoting State v. Roman, 248 N.J. Super. 144, 152 (App. Div. 1991)).

Unlike where a jury is the factfinder, an N.J.R.E. 104 hearing is not mandatory in a bench trial if the court demonstrates awareness of the correct standard and makes the appropriate findings. State in the Int. of S.M., 284 N.J. Super. 611, 620-21 (App. Div. 1995) (holding, where counsel did not request a hearing, defendant suffered no prejudice, and the court assessed relevant evidence to make the necessary findings, the omission of a Rule 104(a) hearing did not warrant reversal).

Here, the trial court initially required a Rule 104 hearing, including a formal motion and certifications, to decide the admissibility of the disclosures, but later reversed course in favor of deciding the issue as it heard the testimony. Several witnesses testified the children had disclosed to them one or more of the three primary instances of abuse alleged by defendant, namely: a friend of defendant's family who often babysat the children; a licensed clinical social worker (LCSW), who treated the older child; a police officer who interviewed

the younger child; a forensic psychiatrist retained by defendant; a social worker who evaluated the younger child for the Division; a child psychologist who interviewed both children for the Division; and defendant. The older child also testified about observing the toe sucking and ball clapping incidents, and about his younger brother's disclosure of the digital penetration incident.

Notwithstanding the evidence, the trial court ruled the toe sucking and ball clapping incidents were not sexual in nature and did not fall under N.J.R.E. 803(c)(27). The court stopped the babysitter's testimony to say the toe sucking incident was "not sexual misconduct," but then said it would not make any findings on N.J.R.E. 803(c)(27), at least until the day's testimony had concluded. The court made no formal rulings that day.

After the LCSW described both children's disclosures of the toe sucking incident, the court opined again that nothing in the testimony was sexual in nature. During an exchange with the forensic psychologist, the court instructed that if his testimony did not directly report a sexual allegation, it would not be permitted.

The Division's social worker testified on the next trial date. Beforehand, the court ruled that it considered the term "sexual misconduct" in N.J.R.E. 803(c)(27) included only those acts defined as a "sexual offense" or "sexual

conduct" under the New Jersey Criminal Code and "any other types of abuse that is not specifically defined as sexual is not permissible hearsay under th[e] rule." This meant that even disclosure of purported grooming behavior such as the toe sucking did not fall within the ambit of N.J.R.E. 803(c)(27). Nonetheless, the court allowed defense counsel to examine the witness on the incidents. When defense counsel called the Division's child psychologist two days later and proffered that the testimony would include a discussion of the toe sucking incident, the court reiterated: "I already made a ruling that's not sexual . . . but I'm going to allow the testimony anyway."

The court restated its ruling when defendant testified two days later and attempted to describe the younger child's disclosure of the "ball[ ]clapping" incidents. Defense counsel urged the court to withhold its ruling until it heard all the evidence. The court countered it had already heard the evidence "from the person who actually witnessed it himself," presumably referring to the older child, and had made its ruling. Defense counsel replied she was "not aware that the [c]ourt made any rulings on . . . [the] 803(c)(27) motions," to which the court answered: "If you [are] not aware, then you are right now. That [is] it . . . The only sexual disclosure is the alleged butt incident . . . I can[not] be more clear."

Defense counsel continued her objection at the next trial date and argued the court had prematurely developed a partial ruling. She proffered defendant would have explained that "the children showed him that the toe-sucking . . . was akin to [the younger child] performing fellatio on [A.S.]'s toe, and that the multiple incidents of ball-clapping . . . occurred while [A.S.] was naked and/or while one or both of the children were naked." The court repeated its view that "the only sexual conduct . . . [it] considered here as 803(c)(27) [evidence] . . . was the alleged finger up the butt or touching the butt incident." It noted the title and the body of N.J.R.E. 803(c)(27) referred to "sexual offenses" and the "ball[ ]clapping" incident was not a sexual offense because "there's no indication if it was done for sexual gratification" and "there were clothes on." The court did not detail its reasoning with respect to the toe sucking incident. Based on the court's ruling, defendant withdrew the motion to admit testimony from the Division's social worker and psychologist regarding the toe sucking and ball clapping incidents.

On another date, the court heard argument on the admissibility of various hearsay. Having ruled on the "sexual conduct" issue, the court focused on the corroboration element of N.J.R.E. 803(c)(27), as well as the applicability of assorted other hearsay exceptions. The children's court-appointed lawyer

21

argued the court could not accurately gauge whether the toe sucking and "ball[ ]clapping" incidents were sexual without hearing from A.S. The court concurred. A.S. testified and denied any of the incidents had occurred.

Following A.S.'s testimony, the court issued its decision on the admissibility of the children's disclosures. Pursuant to N.J.R.E. 803(c)(27), it admitted the younger child's March 13, 2020, disclosures of the digital penetration to defendant, his older brother, and the police officer. It found the toe sucking and "ball[ ]clapping" incidents were non-sexual but sufficiently troubling to constitute adequate corroboration under N.J.R.E. 803(c)(27).

The older child's statements to the LCSW were admitted under N.J.R.E. 803(c)(4). These included descriptions of the toe-sucking incident and other occasions in which A.S. had antagonized the children. The statements were consistent with the older child's testimony and defendant's original order to show cause. The other testimony relaying the children's statements was excluded.

We conclude the trial court committed a mistake of law when it confined N.J.R.E. 803(c)(27) to sexual offenses defined by the criminal code. The court also pre-judged the issue without hearing the proffered testimony.

"No less than legislated statutes, rules of evidence must be interpreted to avoid injustice and to conform to the spirit and intention of the drafters." M.P.

22

v. Wee Care Day Nursery, 250 N.J. Super. 119, 122 (App. Div. 1991). We interpret the Rules of Evidence in the same way as a statute. Ibid. We begin with the plain language of the rule and where there is an ambiguity, or the interpretation will create an absurd result, we resort to the Rule's purpose, legislative history, and statutory context. Ibid.; Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323 (2000).

Although a source of interpretation, statutory titles are "often not instructive." State v. Hodde, 181 N.J. 375, 382-83 (2004) (citing 2A Norman J. Singer, Statutes and Statutory Construction § 47.03 (5th ed. 1992); N.J. Const. art. IV, § 7, ¶ 4). This is because the Legislature has stated neither the "title, subtitle, chapter, article or other part thereof," nor "cross reference or cross reference note . . . shall be deemed to be part of the Revised Statutes or [an individual] statute." N.J.S.A. 1:1-6; see also N.J.S.A. 2C:1-1(g). A title can be contextualizing or advisory, but it is never binding. Ibid.; see also Yates v. United States, 574 U.S. 528, 552 (2015) (Alito, J., concurring) ("Titles, of course, are . . . not dispositive.").

This is so "even when the [title] is included in the text of the law as passed . . . ." State v. Malik, 365 N.J. Super. 267, 279 (App. Div. 2003). In Malik, we held that a law titled "Misconduct of a Corporate Official" applied to the

defendant, who had no corporate or executive position.  Id. at 280-81.  While defendant did not fit within the title of the law, he fit within the text, which applied to anyone who "uses, controls or operates a corporation" for proscribed purposes.  Id. at 275.

Notably, in Malik, we held the descriptive utility of a statutory title is in part derived from the constitutional requirement that "every law shall embrace but one object, and that shall be expressed in the title."  Id. at 282.  The Rules of Evidence are not constrained in this fashion further reducing the utility of any given Rule's title.

The Rules of Evidence, including N.J.R.E. 803, do not define the term "relating to sexual misconduct."  However, prior to the 1993 revision of the Rules of Evidence, the Rule governing the tender years exception, codified as Evidence Rule 63(33) (1991) and titled in the same manner as N.J.R.E. 803(c)(27), covered statements "by a child under the age of [twelve] relating to a sexual offense under the Code of Criminal Justice."  Rule 63(33) also provided such statements were admissible "in a criminal proceeding brought against a defendant for the commission of such [an] offense . . . ."

N.J.R.E. 803(c)(27) is broader than its predecessor and makes such statements admissible in any "criminal, juvenile, or civil case."  It does not

24

require that the statements either be offered against the putative perpetrator, or that the proceeding be centered on those events. N.J.R.E. 803(c)(27) also deletes the reference to "a sexual offense under the Code," and replaces it with a more general reference to "sexual misconduct."

For these reasons, we conclude the term "sexual misconduct" is not confined to the conduct described in the criminal code. A contrary reading would not only ignore the plain language of the Rule but import the criminal code into civil cases, where there is no evidence the drafters intended to do so.

Although the trial court correctly observed the title of the Rule still refers to a "sexual offense," this may be a vestige of Rule 63(33), which was criminal code centric. Regardless, the text of the Rule controls, not the title.

Although the Rule does not define "sexual misconduct," our Legislature has defined the term elsewhere. N.J.S.A. 18A:39-11.5 governs eligibility to bid on Department of Education "pupil transportation contracts." N.J.S.A. 18A:6-7.7 governs an employer's responsibility to collect information from a prospective employee, while N.J.S.A. 18A:6-7.9 addresses an employee's failure to provide such information. Each statute references "sexual misconduct." For the purposes of N.J.S.A. 18A:6-7.7 and -7.9:

> "Sexual misconduct" means any verbal, nonverbal, written, or electronic communication, or any other act

directed toward or with a student that is designed to establish a sexual relationship with the student, including a sexual invitation, dating or soliciting a date, engaging in sexual dialogue, making sexually suggestive comments, self-disclosure or physical exposure of a sexual or erotic nature, and any other sexual, indecent or erotic contact with a student.

[N.J.S.A. 18A:6-7.6.[4]]

This definition of sexual misconduct suggests the term covers not only inappropriate sexual acts, but conduct designed to facilitate these acts. Although we do not suggest N.J.S.A. 18A:6-7.6 and N.J.S.A. 18A:39-11.5(f) control vis-à-vis N.J.R.E. 803(c)(27), their definition of misconduct is more harmonious to N.J.R.E. 803(c)(27) than the criminal code and offer a practical in application in a civil case context such as this case.

Also, N.J.R.E. 803(c)(27) is broader in scope than N.J.S.A. 18A:6-7.6 and N.J.S.A. 18A:39-11.5(f) because the Rule includes conduct "relating to sexual misconduct." (emphasis added). Thus, even conduct that is not strictly sexual misconduct is arguably covered by the Rule.

In Morales v. TWA, 504 U.S. 374, 383-84 (1992), the United States Supreme Court interpreted a statute, which preempted states from taking certain

---

[4] N.J.S.A. 18A:39-11.5(f) is identical, except that it uses "child or student" where N.J.S.A. 18A:6-7.6 uses "student."

actions "relating to rates, routes, or services of any air carrier." The Court observed that "[t]he ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . .'" Id. at 383 (citing Black's Law Dictionary 1158 (5th ed. 1979)). It rejected the petitioner's argument that the statute only forbids states from "actually prescribing rates, routes, or services" as "simply read[ing] the words 'relating to' out of the statute." Id. at 385.

Here, the trial court not only confined sexual misconduct to the criminal code, it ignored that conduct "relating to" sexual misconduct was also captured by N.J.R.E. 803(c)(27). A court must read all parts of an enactment such that "none are rendered meaningless." State v. Rangel, 213 N.J. 500, 5112 (2013). For these reasons, the court committed reversible error when it barred the testimony relating to sexual misconduct under N.J.R.E. 803(c)(27).

IV.  Defendant's Remaining Claims

We do not reach defendant's claims regarding the conflict of interest allegedly created by the trial court's law clerk and the court's resultant refusal to vacate its order because there will be a new trial. Moreover, at oral argument, defendant's attorney confirmed the matter was transferred to a different vicinage and is being heard by a different court.

A-2455-21

We also do not reach defendant's challenges to the attorney's fees and expert's fees because we have reversed the matter in favor of a new, more comprehensive, best interests hearing. The trial court will be in a better position to reassess these issues after completing the best interests hearing.

Finally, we recognize that regardless of the outcome, it creates great stress to the parties and the children to be put through another trial. For these reasons, we direct the new trial court to expeditiously conduct the best interests hearing. Whether and how the reunification process should proceed shall abide by the outcome of the best interests hearing or further order of the trial court.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION